SIXTH DIVISION 

October 12, 2001

No. 1-99-3734

THE PEOPLE OF THE STATE OF ILLINOIS,

Plaintiff-Appellee, 

v.

LAREE HENDRICKS,

Defendant-Appellant.

)

)

)

)

)

)

)

)

)

Appeal from the

Circuit Court of

Cook County

Honorable

Preston Bowie,

Judge Presiding.

JUSTICE O'MARA FROSSARD delivered the opinion of the court:

Following a bench trial, defendant Laree Hendricks was convicted of possession of a controlled substance with intent to deliver and sentenced to six years in prison.  Defendant  argues for a new trial, claiming she was denied her right to due process and a fair trial by the trial court which allowed the State to present evidence of a statement allegedly made by defendant that was not disclosed in discovery.  Alternatively, if a new trial is not granted, defendant contends that her conviction should be reduced to simple possession because the State failed to prove intent to deliver beyond a reasonable doubt.  We reverse and remand.

BACKGROUND

A package containing a clown doll was sent to defendant from Texas.  Inside the doll was a plastic bag containing a rock of cocaine that weighed 27.81 grams.  The package was intercepted at O'Hare Airport, and pursuant to a federal search warrant, a signaling device called an AT-4 transmitter was taped inside the package containing the clown doll by a postal inspector, William Nichols.

The postal inspector dressed as a regular mail carrier delivered the package to defendant at her home where she had resided her entire life.  Defendant was 26 years old at that time.  The postal inspector testified that, before accepting the package, defendant questioned him because he was not her regular mail carrier.  According to the testimony of the postal inspector, defendant appeared "cautious and suspicious."  Inspector Nichols told defendant that if she did not want the package it would be sent back to Texas. Defendant told him she would take the package.  Inspector Nichols informed defendant that she had to sign for the package.  Defendant then signed a receipt and accepted the package.   

During direct examination Inspector Nichols testified that defendant told him that she was expecting a package from Texas.  It was revealed on cross-examination that he had created a memorandum of his "interview" with the defendant that contained this admission.  This admission and the written memorandum of defendant's alleged oral statement were never disclosed or tendered to the defense.  Defense counsel moved for a mistrial, arguing that evidence of defendant's statement that she was anticipating a package from Texas was not tendered by the State during discovery.  The trial court denied the motion for a mistrial but offered to continue the case to give defense counsel an opportunity to conduct further investigation.  Defense counsel declined the offer.

Various Chicago police officers assisted Inspector Nichols by keeping defendant under surveillance.  Chicago police officer Stump testified that after defendant accepted the package he observed the defendant looking back and forth in front of the house before reentering.  Ten minutes after defendant entered her home, Inspector Nichols was alerted by the transmitter that the package had been opened.  He notified the Chicago police officers of the transmission.  By the time Inspector Nichols entered the defendant's house the police were already on the premises.  Defendant was in the living room.  Two infants and an adult male were also present.

Inspector Nichols found the package on the kitchen table and recovered the transmitter.  One of the officers present during the search entered the house with the clown doll in his hand.  The defendant told police she threw the clown doll out of the window because she was scared.  The officers recovered $800 in United States currency from defendant's bedroom.  The police also recovered a plastic bag containing the cocaine concealed inside the clown doll.  The parties stipulated that the lab analysis of the powder proved positive for cocaine in the amount of 27.81 grams.

Defendant testified that a man dressed in a postal uniform asked her whether she would sign for a package that was addressed in her name.  She testified she questioned the mail carrier about why he was delivering her mail as he had never done so before.  She testified that she asked him why should she sign for the package and he asked "Is Larry home?  Could you sign it and just give it to Larry?"  She indicated that she never told the mail carrier that she was expecting a package.  She also denied looking up and down the street before reentering her home.  Defendant testified that when she signed for the package, she did not know what was contained inside and had not ordered anything.   Defendant testified that her male friend, Curtis Shelby, who was present in the house at the time, opened the package.  He asked her whether the package was intended as a joke because it contained a doll.  Suddenly, according to defendant, Shelby began to scream that men were running through her gangway and told her to get rid of the doll.  Shelby told her to throw the doll out the window.  She testified that she then threw the doll out the window because she was scared.

Defendant indicated that she admitted the officers into the home and told the police not to break the door down because she did not want her mother's house damaged.  In response to questions by the police, she told them the location of her money in her closet and her mother's money in her mother's room.  The record does not clearly establish the amount of cash recovered, but on appeal, the State submits that the amount was $800.  The police found no drug paraphernalia or guns in the house. 

The trial court found the defendant guilty of possession of a controlled substance with intent to deliver.  Defendant was sentenced to six years in prison.  The defendant was working, had no previous felony arrests or convictions, had no drug history and was the mother of five children.  

ANALYSIS

I. DISCOVERY VIOLATION

We first address defendant's argument that the State's failure to disclose in discovery a statement made by defendant to Inspector Nichols denied defendant her right to due process and a fair trial.  It is undisputed that evidence of defendant's alleged admission to Inspector Nichols was not disclosed or tendered to defense counsel during discovery.  The standard of review for a discovery violation is whether the trial court abused its discretion.  
People v. Weaver
, 92 Ill. 2d 545, 559 (1982).  Although the judgment of the trial court is given great weight, a reviewing court will find an abuse of discretion when a defendant is prejudiced by the discovery violation and the trial court fails to eliminate the prejudice.  
Weaver
, 92 Ill. 2d at 559.

During the direct examination of Inspector Nichols by the State, it was revealed for the first time that defendant had allegedly told Inspector Nichols that she was expecting a package from Texas.  On cross-examination of Inspector Nichols it was revealed for the first time that Inspector Nichols had created a written memorandum of his alleged "interview" with the defendant that contained the admission.  Defense counsel made a motion for mistrial which was denied.  Defense counsel rejected the trial court's offer of a continuance at that stage in the trial process. 

Supreme Court Rule 412 governs disclosure to the accused in criminal cases.  134 Ill. 2d R. 412.  Rule 412 in pertinent part provides as follows:

"(a) Except as is otherwise provided in these rules as to matters not subject to disclosure and protective orders, the State shall, upon written motion of defense counsel, disclose to defense counsel the following material and information within its possession or control:

***

(ii) any written or recorded statements and the

substance of any oral statements made by the accused *** and a list of witnesses to the making and acknowledgment of such statements."  134 Ill. 2d R. 412 (a)(ii).

The duty of the State to disclose under Rule 412 is a continuing one, requiring prompt notification to the defendant of the discovery of any additional material or information, up to and during trial.  134 Ill. 2d R. 415(b); 
People v. Watson
, 76 Ill. App. 3d 931, 935-36 (1979).  While compliance with the discovery rules is mandatory, the failure to comply with these rules does not require a reversal absent a showing of prejudice.  
People v. Robinson
, 157 Ill. 2d 68, 79 (1993).  A new trial should be granted if the defendant is prejudiced by the discovery violation and the trial court fails to eliminate the prejudice.  
People v. Tripp
, 271 Ill. App. 3d 194, 201 (1995).

The State argues that the failure to tender the statement did not prejudice defendant.  We disagree and find that the State's failure to provide defendant with the substance of the oral statement and a copy of the written memorandum containing the oral statement was a violation of Rule 412(a)(ii) which prejudiced defendant.  In deciding whether a defendant is entitled to a new trial as the result of a discovery violation by the State, the supreme court has articulated the factors we are to consider as including the following: (1) the closeness of the evidence; (2) the strength of the undisclosed evidence; (3) the likelihood that prior notice could have helped the defense discredit the evidence; and (4) the willfulness of the State in failing to disclose the new evidence.  
Weaver
, 92 Ill. 2d at 560. 

A. Closeness of the Evidence 

First, we address the closeness of the evidence.  We note that in this case no drug paraphernalia was ever recovered from the defendant's home.  No weapons, police scanners, beepers or cellular phones were recovered.  None of the indicia of items commonly associated with drug possession or drug possession with the intent to deliver were present here.

Proof that defendant "knowingly" possessed a controlled substance with the intent to deliver is an element of this offense.  
People v. Williams
, 267 Ill. App. 3d 870 (1994).  The element of knowledge may be proved by evidence of acts, declarations, or conduct from which the fact finder may infer knowledge.  
People v. Butler
, 304 Ill. App. 3d 750, 755 (1999).
 The only evidence demonstrating knowledge that a package was expected by the defendant from Texas was the undisclosed oral statement allegedly made by defendant to Inspector Nichols that she was expecting a package from Texas.  Here, there is no evidence that the defendant opened the clown doll that contained the cocaine.  Moreover, it is uncontested that one could not determine what was contained inside the doll simply by looking at it.  The evidence showing defendant's knowledge of the package that subsequently proved to be drugs is provided by the defendant's "alleged" oral statement to Inspector Nichols which was first disclosed during trial.  We further note the memorandum containing that alleged oral statement was undated and there was no evidence that it was signed.

Regarding defendant's conduct when she accepted the package, Inspector Nichols testified that defendant appeared cautious and suspicious.  However, defendant explained her suspicion as triggered by the fact that she knew Inspector Nichols had never delivered her mail before and she questioned him about why he was delivering her mail.  Looking at Inspector Nichols' testimony in total regarding defendant's demeanor demonstrates that Inspector Nichols recognized that fact:

"THE STATE: Would you describe her demeanor at that time.

NICHOLS: Cautious, suspicious.  She just didn't understand.  She looked – she was constantly looking at the package but then she would look at me asking again twice why was I delivering the mail.  I then said if you did not want the package it would be sent back to Texas."

Based on that record, Inspector Nichols' testimony that defendant appeared cautious and suspicious can be found to be consistent with defendant's explanation that she was suspicious because Inspector Nichols had never previously delivered her mail.

The record reflects inconsistent evidence regarding defendant's conduct after she accepted the package.  Chicago police officer Stump testified that, after defendant received the package, "She proceeded to the sidewalk in front of her house and she looked to the north, she looked to the south.  She walked back and forth in front of her house for a couple seconds and then she proceeded eastbound through her gangway which is on the south side of her house and she was out of my view."  Defendant denied looking up and down the street before reentering her home.  She explained why she threw the clown doll out of the window.  She indicated that she became scared when Curtis Shelby told her to throw the doll out of the window because people were running through her gangway.  The evidence is also conflicting regarding defendant's conduct when the police came to her door.  The State contends the door to defendant's home was forced open by the police, while defendant testified that no force was used and she opened the door voluntarily.   

Based on the record, including the following: (1) the lack of any evidence commonly associated with drug possession or drug possession with intent to deliver; (2) the observation made by Inspector Nichols of defendant's demeanor which was consistent with defendant's explanation for her suspicion; (3) the lack of any evidence that defendant opened the clown doll; and (4) the inconsistencies in the record, we conclude this was a close case.  We further recognize that the closer the evidence, the stronger the argument for excluding the statement or declaring a mistrial.  
Weaver
, 92 Ill. 2d at 560.

B. Strength of Undisclosed Evidence

Turning to the second factor, the strength of the undisclosed evidence, we note that the statement allegedly made by defendant to Inspector Nichols provides evidence as to the element of knowledge.  Proof that defendant "knowingly" possessed a controlled substance is an element of possession of a controlled substance with intent to deliver which may be proved by acts, declarations or conduct from which the fact finder may infer knowledge.  
Williams
, 267 Ill. App. 3d 870.  The due process clause protects an accused against conviction except upon proof beyond a reasonable doubt of every element of the offense charged.  
In re Winship
, 397 U.S. 358, 364, 25 L. Ed. 2d 368, 375, 90 S. Ct. 1068, 1073 (1970); U.S. Const., amend. XIV; Ill. Const. 1970, art I., §2; 720 ILCS 570/401 (a)(2)(D) (West 2000).  Regarding the element of knowledge, we note that Inspector Nichols testified that you could not determine what was inside the doll without opening up the doll.  That fact was corroborated by the testimony of officer Stump. There was no evidence that the defendant ever looked inside the doll.  There was no evidence the doll was opened up by defendant or anyone else before it was recovered by the police.  Here, the State relies on defendant's alleged statement that she was expecting a package from Texas to substantiate the element of knowledge.

We find the case of 
People v. Ackerman
, 2 Ill. App. 3d 903 (1971), instructive.  In 
Ackerman
,  the court reversed a conviction based on the State's failure to prove that defendant knowingly possessed the controlled substance.  A post office employee became suspicious of a package because, although it was wrapped like a book, it rattled when it was shaken.  A search of the package revealed 140 LSD tablets.  The police then resealed the package and set up surveillance of the university dormitory where the package was delivered.  Defendant arrived at the dormitory, retrieved a notice from his mail box that packages were delivered, presented the notice, picked up the package and headed for the elevator.  He was immediately arrested.  The 
Ackerman
 court held that the State had failed to prove that defendant had knowing possession of the controlled substance.  The court reasoned that, although the element of knowledge seldom can be directly proved, defendant committed no "acts, declarations or conduct which fairly support any inference of knowledge."  
Ackerman
, 2 Ill. App. 3d at 905.  

In this case the defendant's alleged statement to Inspector Nichols provides evidence supporting the inference of knowledge which was missing in 
Ackerman
.  The admission of the statement undermined the credibility of defendant and substantially bolstered the State's case. The State repeatedly referred to the fact that defendant was expecting the package of cocaine.  In closing  the State argued:

"THE STATE: What really happened here is that this defendant was expecting a package from Texas and she was expecting a package that contained cocaine and that's exactly what she got."

In rebuttal the State again referred to the fact defendant was expecting the cocaine and argued:

"THE STATE: That package was deliberately sent to her and she was expecting it."

The repeated reliance on this evidence by the State supports our conclusion that this evidence was significant in proving the element of knowledge.  The record reflects inconsistent evidence regarding the defendant's acts, conduct and declarations, together with the lack of any other evidence of defendant's knowledge of what was contained inside the clown doll.  Therefore, we conclude, regarding the strength of the undisclosed evidence, that defendant's statement that she was expecting a package from Texas was critical to sustain the State's burden of proving the element of knowledge. 

C. Prior Notice Could Help Defense Discredit Evidence

The next factor we consider in deciding whether the discovery violation requires a new trial is the likelihood that prior notice could have helped the defense discredit the evidence.  Prior notice could have provided the defense with an opportunity to attempt to discredit the evidence.  In the present case the defense had no such opportunity.  Based on the lack of disclosure, the defense was unable to offer evidence or modify its trial strategy in order to lessen the negative impact of the statement on defendant's case.  The credibility of defendant regarding this critical alleged statement was directly challenged by the surprise testimony of Inspector Nichols.  Defense counsel in assessing the credibility challenge did not have the benefit of considering whether a jury rather than a judge might have strategically provided the better forum in which to resolve this critical credibility issue.

Moreover, as argued by defense counsel the element of surprise regarding this statement damaged his ability during the trial to discredit the evidence:

"DEFENSE COUNSEL: The thing that we think that was the most damaging to this young lady was that during the course of the trial, the officer who had Miss Hendricks sign for the package said that Miss Hendricks made the statement that, 'I was expecting a package.'

This case had been pending for three years.  No where in any

reports had there been any suggestion that any such statement was made, that 'I was expecting a package.'

Even the State's Attorney himself did not have any such statement, and the officer–when I looked to the State for the report, the State did not have it.

The officer then left the witness stand, and he came back, went in the back and came back with a document in which he says that he made out a report concerning this incident, but that report that he had allegedly made out was not dated which gives rise to a question in my mind as to the fact that the report could have just been made out at any time.

It was shocking that such a statement which would give this court some indication that at least she expected a package, that that most crucial part of the case was not tendered to the Defense.  ***

I think, Judge, when we look at it and look at what happened in this case, this failure to provide me as a defense lawyer with a statement that would tend to show knowledge on the part of this young lady was so, it was such a surprise and so damaging in my opinion, it affected me in how I would have proceeded in any number of ways where we are then left without the ability to file a motion to suppress.  We were without the ability to file anything with the State, to do any other number of things by way of a pre-trial motion.

But in the midst of the trial when this was sprung on us and we are here with a young lady who has already been put in jeopardy, there was nothing that I could do to protect her from this relevant and material statement.  ***

It was only during the course of the trial that that document was presented unsigned and undated." 

Without citing any authority the State argues that the defendant cannot claim prejudice because, rather than accept the trial court's offer of a continuance to investigate the undisclosed statement, defendant proceeded with trial.  The State contends, "If a continuance was not necessary, it cannot reasonably be maintained that a new trial is warranted."  We disagree because the damage had already been done.

In 
Weaver
, the court remanded for a new trial noting that the damaging testimony occurred before it was possible for defendant to request a continuance.  There was no time to request a continuance before the testimony was heard.  The court noted that each case must be decided on its own facts and that the defendant's failure to accept a continuance was not fatal to the defendant's position.  
Weaver
, 92 Ill. 2d at 559-60. 
 Weaver
 also recognized a variety of sanctions that may be used when the discovery rule is violated. 
 Weaver
, 92 Ill. 2d at 558.  The trial court may order disclosure of the information, grant a continuance, exclude the evidence, or enter such other order as it deems just under the circumstances.  
Weaver
, 92 Ill. 2d at 558. 

Here, the defense did not learn of the substance of this statement until the actual questioning of Inspector Nichols by the State.  As in 
Weaver
, the damage had already been done, there was no time to request a continuance before the incriminating testimony was heard.  
Weaver
, 92 Ill. 2d at 559-60.  A continuance would not have been an adequate remedy in the middle of trial when the damaging testimony was already in evidence.  See, 
People v. Agyei
, 232 Ill. App. 3d 546, 554-55 (1992).  

In 
Tripp
, 271 Ill. App. 3d at 201, the court, faced with a similar factual situation, agreed with 
Weaver
 and concluded that the failure to request a continuance should not preclude defendant from claiming prejudice.  As in 
Weaver
 and 
Tripp
, here the damage had already been done and a continuance would not have eliminated the prejudice against defendant.  The case had been pending for three years.  In the context of this bench trial, at the point when the statement was first disclosed on direct examination of Inspector Nichols, absent the mistrial requested by defense counsel, only exclusion of the statement would have provided the defense a level playing field.

The evidence of knowledge provided by the undisclosed statement was an important ingredient in establishing guilt beyond a reasonable doubt.  We cannot say that defendant could not have presented a more effective defense given adequate time to investigate before trial.  
Weaver
, 92 Ill. 2d at 560.  The purpose of the discovery rule is to afford the accused protection against surprise, unfairness and inadequate preparation. 
 Particularly in a close case such as this, the surprise, and  lack of any opportunity before trial to investigate the circumstances surrounding the undisclosed alleged oral statement serve to undermine the fairness of the trial process. 
  Accordingly, we reject the State's contention that defense counsel's failure to accept the trial court's offer of a continuance supports the conclusion that defendant suffered no prejudice.

D. Willfulness of State's Failure to Disclose

The final factor at issue is the willfulness of the State in failing to disclose the new evidence.  The knowledge of police officers under certain circumstances has been held to be imputed to the prosecution.  
People v. Young
, 59 Ill. App. 3d 254 (1978).  We are mindful of the admonition 
that imputation of such knowledge to the prosecution requires an individualized focus on the factual circumstances, including: (1) the reasonableness of such imputation; (2) whether the failure to transmit such knowledge up the informational chain was inadvertent or intentional; and (3) whether any real prejudice occurred.  
Robinson
, 157 Ill. 2d at 80.

We further note that when Inspector Nichols failed to complete his answer on direct examination, the State elicited evidence of the alleged statement which had not been previously disclosed to the defense:

"NICHOLS: I told her that in fact I was out of O'Hare and that I delivered nothing but express mail and was she Laree Hendricks?

THE STATE: And did she respond?

NICHOLS: Yes.  She says, 'I'm Laree Hendricks' and she said, 'I'm expecting a package from'-- 

THE STATE: Did she – did she indicate where she was expecting a package from?

NICHOLS: Yes, Ma'am.

THE STATE: Where –where – excuse me.  Where was she expecting a package from?

NICHOLS: She told me it was from Texas.

THE STATE: And was the package that you were about to deliver in fact from Texas?

NICHOLS: Yeah.  It was from McAllen, Texas."  

We further note that when Inspector Nichols was cross-examined by defense counsel about

the undisclosed alleged oral statement and the undisclosed report, he indicated: "I gave it to the State's Attorneys and the Chicago police subsequent to -- to the arrest if I may add."  Later, on redirect examination by the State concerning the undisclosed document, Inspector Nichols testified: "I always provide a copy of that to Chicago police but I put it in my file, yes."  Inspector Nichols also testified that he created the undisclosed report on July 12, 1996.  The record indicates the report was first tendered to defense counsel approximately three years later, on May 20, 1999, during trial. 

The record raises questions about whether the State in fact had knowledge of the statement or whether at some point the State was tendered the report by Inspector Nichols.  Regardless of the claim by Inspector Nichols that he "gave it to the State's Attorneys and the Chicago police," defense counsel indicated that when he looked to the State for the report, the State did not have it.  Defense counsel did not argue that the failure to disclose the statement and tender the report was willful on the part of the State.
  Defense counsel indicated that "Even the State's Attorney himself did not have any such statement, and the officer -- when I looked to the State for the report, the State did not have it."  As further noted by defense counsel, Inspector Nichols left the witness stand, went into a back room and came back with the report.  Although the record is not completely clear, particularly in light of the testimony of Inspector Nichols, we conclude this record does not support a finding of willfulness by the State in failing to disclose the statement and tender the report.

However, in considering the 
Robinson
 factors, including the closeness of the evidence, the strength of the undisclosed evidence and the likelihood that prior notice could have helped the defense discredit the evidence,  we cannot say the prejudice from this error was harmless beyond a reasonable doubt.  
Weaver
, 92 Ill. 2d at 560;
 People v. Cruz
, 162 Ill. 2d 314, 374 (1994).  Defendant is therefore entitled to a new trial as the result of the discovery violation.  Since we reverse defendant's conviction and vacate her sentence, we next address whether the evidence was sufficient to support a finding of guilt beyond a reasonable doubt of possession of a controlled substance with the intent to deliver.

II. SUFFICIENCY OF EVIDENCE

A criminal conviction will not be set aside on review unless the evidence is so unreasonable, unsatisfactory or improbable that there remains a reasonable doubt of defendant's guilt.  
People v. Williams
, 193 Ill. 2d 306, 338 (2000).  In addressing the question of  the sufficiency of the evidence it is not the court's role to reweigh the evidence.  
People v. Tye
, 141 Ill. 2d 1 (1990).  Rather, the reviewing court must determine whether, after viewing all the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.  
Jackson v. Virginia
, 443 U.S. 307, 318-19, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781, 2788-89 (1979); 
People v. Perez
, 189 Ill. 2d 254, 265-66 (2000).

To establish that a defendant committed the offense of possession of controlled substance with intent to deliver, the State must prove beyond a reasonable doubt the following elements: (1) the defendant had knowledge of the presence of the narcotics; (2) the narcotics were in the defendant's immediate possession or control; and (3) the defendant intended to deliver the narcotics.  720 ILCS 570/401 (West 2000); 
People v. Robinson
, 167 Ill. 2d 397, 407 (1995).

In 
Robinson
, 167 Ill. 2d at 408, our supreme court noted that intent to deliver is usually proven through circumstantial evidence because direct evidence of intent rarely exists.  A variety of factors have been considered as probative of intent to deliver.   

"Such factors include whether the quantity of controlled substance in defendant's possession is too large to be viewed as being for personal consumption (
People v. Berry
 (1990), 198 Ill. App. 3d 24), the high purity of the drug confiscated (
People v. Torres
 (1990), 200 Ill. App. 3d 253), the possession of weapons (
People v. Dockery
 (1993), 248 Ill. App. 3d 59), the possession of large amounts of cash (
People v. Jones
 (1991), 215 Ill. App. 3d 652), the possession of police scanners, beepers or cellular telephones (
People v. LeCour
 (1988), 172 Ill. App. 3d 878; 
People v. Bradford 
(1993), 239 Ill. App. 3d 796), the possession of drug paraphernalia (
People v. McDonald
 (1992), 227 Ill. App. 3d 92) and the manner in which the substance is packaged (
People v. Banks 
(1992), 227 Ill. App. 3d 950)."  
Robinson
, 167 Ill. 2d at 408.

Here, the State did not argue that the amount of cocaine, which is just under an ounce, was sufficient standing alone to support a conviction of possession with an intent to deliver.  Rather, the State contends that sufficient circumstantial evidence supported the element of intent to deliver.  The State argued that in addition to the cocaine, defendant's demeanor was "cautious" and "suspicious," $800 was recovered from the defendant's home and defendant attempted to dispose of the cocaine which "suggests her guilt of the offense."

In arguing that this evidence constituted sufficient proof of intent to deliver, the State relies on 
People v. Little
, 322 Ill. App. 3d 607 (2001), and 
People v. Chapple
, 291 Ill. App. 3d 574 (1997).  In 
Little
, 1.5 grams of cocaine were recovered from defendant.  Although that amount of cocaine could reasonably be possessed for personal consumption, this court concluded that intent to deliver was proven beyond a reasonable doubt when police officers observed two individuals separately approach defendant on a street corner and hand him money in exchange for a small object.  Further, six individually wrapped packets of cocaine were found on defendant's person.  
Little
, 322 Ill. App. 3d at 611-12.

In 
Chapple
, defendant was convicted of possession with intent to deliver when the evidence established that defendant knocked on the door of a residence where police officers were executing a search warrant.  Upon seeing the police, defendant fled and threw down a plastic bag containing four to six rocks of crack cocaine.  When the officers apprehended defendant, they recovered $500 from his pants pocket.  At trial, an expert witness testified that each rock of cocaine recovered weighed approximately six grams and this amount was larger than the typical rocks of crack cocaine for individual use.  
Chapple
, 291 Ill. App. 3d at 579-81.

Both 
Little
 and 
Chapple
 are readily distinguishable from the case at bar.  Unlike 
Little
, there was no evidence that defendant attempted to sell any of the cocaine found hidden in the clown doll.  The contraband recovered from defendant was not individually packaged but, instead, was found in a single plastic bag.  Further, the contraband was not recovered from defendant's person, but was found concealed in the clown doll.  There was no evidence the clown doll had been opened by defendant.  Additionally, unlike 
Chapple
, the State failed to present expert testimony demonstrating that the amount of cocaine recovered from the clown doll exceeded the amount usually possessed for personal consumption.  The State, in fact, concedes in its brief that the amount of cocaine recovered could be consistent with personal use, but argues there was sufficient circumstantial evidence proving the element of intent.

In reviewing this record, including the direct and circumstantial evidence, we find none of the recognized indicia of intent to deliver present here.  No guns, ammunition, scale, pagers, telephone beeper, large amount of money, or drug records  were recovered from defendant's residence.  
People v. Robinson
, 233 Ill. App. 3d 278, 289 (1992).  No drug paraphernalia, plastic baggies, or police scanners commonly associated with the selling of cocaine were recovered.  
People v. Bradford
, 239 Ill. App. 3d 796, 800 (1993).  The packaging of the cocaine in this case in one package, as opposed to many small packets, does not evidence an intent to deliver.  
Bradford
, 239 Ill. App. 3d at 800-801.
  There was no evidence defendant had any knowledge of local drug trafficking and no evidence of any involvement with drugs.  
People v. McDonald
, 227 Ill. App. 3d 92, 99-100 (1992).  The State introduced no evidence that the cocaine found inside the clown doll was of high purity and therefore likely to be "cut" or diluted for sale.  
People v. Foules
, 258 Ill. App. 3d 645, 655 (1994).
  No evidence whatsoever was offered as to the purity of the cocaine.  
People v. Pavone
, 241 Ill. App. 3d 1001, 1004 (1993).

We further note the absence of any observations of drug transactions involving the defendant or other activity suggestive of such conduct.  Here, the transaction observed by the postal inspector and the police in the present case does not support a finding that defendant possessed the cocaine with the intent to sell it.  Defendant was observed receiving a package with a doll containing cocaine.  Defendant was not observed selling cocaine.  The fact that defendant was observed being handed a package with a doll containing cocaine supports only a finding of simple possession, given the absence of other indicia of defendant's intent to sell the cocaine.
  People v. Rivera
, 293 Ill. App. 3d 574, 577 (1997).  

It was the State's burden to produce sufficient evidence of intent to deliver.  The State offered no expert testimony in the present case that the amount of cocaine recovered was inconsistent with personal use.  
Chapple
, 291 Ill. App. 3d 579-81.  The State did not argue on appeal that the amount of cocaine in and of itself was sufficient to support a conviction of possession with an intent to deliver.  While the State argues that the circumstantial evidence supports the intent to deliver, the State also candidly admits in its brief that the amount of cocaine could be considered consistent with personal use.  "In this case, although the amount of the controlled substance could be considered consistent with personal use, there was sufficient circumstantial evidence supporting the trial court's conclusion that defendant was guilty of possession of a controlled substance with intent to deliver." 

The circumstantial evidence relied upon by the State including defendant's conduct, demeanor and the fact $800 was recovered from defendant's home are not necessarily indicia of intent to deliver.  The $800 recovered from defendant's bedroom was not commingled  with the cocaine.  The money was not found on defendant's person.  This amount of money must be considered in light of the fact that defendant worked, shared her home with her mother and supported several children.  The description of defendant's demeanor by Inspector Nichols as cautious and suspicious was consistent with defendant's explanation for her suspicion based on the fact that during the many years defendant lived at that same address, Nichols had never delivered her mail.

We are well aware of a myriad of cases where this court has affirmed convictions for possession with intent to deliver where the amount of cocaine recovered was far less than the 27.81 grams recovered in this case.  However, in those cases other factors indicative of intent to deliver were proven beyond a reasonable doubt.  See, 
e.g.
, 
People v. Greenleaf
, 254 Ill. App. 3d 585 (1993) (4.36 grams of cocaine and purchase of cocaine by undercover officer from codefendant at apartment where defendant was arrested); 
Bradford
, 239 Ill. App. 3d 796 (1.3 grams cocaine, cellular telephone, programmable scanner, packaging indicative of intent also found.)
  The question of whether the evidence is sufficient to prove intent to deliver must be determined on a case-by-case basis.
  We note that, in each of these cases, there was more evidence of intent to deliver than in the present case.

We are mindful that in addressing the question of the sufficiency of the evidence we are not to reweigh the evidence.  We have carefully reviewed the record.  Based on the specific circumstances of this case we cannot conclude, when all the evidence is viewed as a whole and in the light most favorable to the State, that any rational trier of fact could have found the element of intent to deliver was proven beyond a reasonable doubt.  In the context of the facts of this case, the alleged oral statement by the defendant, the quantity of cocaine in the amount of 27.81 grams, the amount of money recovered and the conduct of the defendant, all considered in the light most favorable to the State, provide a record insufficient to support defendant's conviction for possession of cocaine with intent to deliver.

CONCLUSION

We find the failure to disclose the alleged oral statement made by defendant to Inspector Nichols that she was expecting a package from Texas, together with the failure to tender the written report containing that statement, resulted in unfair prejudice to defendant.  The purpose of the discovery provision is to afford the accused protection against surprise, unfairness and inadequate 
preparation.  
We cannot say the prejudice resulting from surprise, unfairness and inadequate preparation, as well as from the lack of opportunity to investigate the circumstances surrounding the statement, was harmless beyond a reasonable doubt.  We therefore reverse and remand for retrial.

Based on the record, we find the evidence presented by the State was minimally sufficient to prove defendant guilty of possession; therefore, defendant faces no risk of double jeopardy on retrial for possession of a controlled substance.  
Cruz
, 162 Ill. 2d at 374.  However, for the reasons previously discussed, the evidence was insufficient to establish beyond a reasonable doubt that defendant intended to deliver the cocaine.  Therefore, on remand defendant can only be retried for possession of a controlled substance.  

For the foregoing reasons, defendant's conviction is reversed and sentence is vacated.  The case is remanded for further proceedings consistent with this opinion.

Reversed and remanded.

GALLAGHER, P.J., and BUCKLEY, J., concur.