NOTICE
Decision filed 01/02/20. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2020 IL App (5th) 160390-U

NO. 5-16-0390

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Madison County. |
| | ) | |
| v. | ) | No. 13-CF-986 |
| | ) | |
| | ) | |
| JAMES STEELE, | ) | Honorable |
| | ) | Neil T. Schroeder, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

PRESIDING JUSTICE WELCH delivered the judgment of the court.
Justices Overstreet and Boie concurred in the judgment.

**ORDER**

¶ 1 *Held*: There are no meritorious issues that can be raised on appeal. Therefore, the trial court is affirmed and the Office of the State Appellate Defender's motion for leave to withdraw is granted.

¶ 2 The defendant, James Steele, appeals his conviction and sentence. The Office of the State Appellate Defender (OSAD) was appointed to represent the defendant. OSAD filed a motion to withdraw as counsel, alleging that there is no merit to the appeal. See *Anders v. California*, 386 U.S. 738 (1967). The defendant was given proper notice and granted an extension of time to file briefs, objections, or any other document supporting his appeal. The defendant filed a response. We considered OSAD's motion to withdraw as counsel on

1

appeal and the defendant's response. We examined the entire record on appeal and found no error or potential grounds for appeal. For the following reasons, we grant OSAD's motion to withdraw as counsel on appeal and affirm the judgment of the circuit court of Madison County.

¶ 3                                    BACKGROUND

¶ 4      The State charged the defendant with two counts of predatory criminal sexual assault of a child (720 ILCS 5/11-1.40(a)(1) (West 2012)). Pursuant to section 115-10 of the Code of Criminal Procedure of 1963 (725 ILCS 5/115-10 (West 2012)) the State filed a motion to admit hearsay statements made by the victim to her mother, the Madison County Child Advocacy Center (CAC), and at Cardinal Glennon Children's Hospital (Hospital). The trial court held a hearing on the State's motion.

¶ 5      Kim Mangiaracino testified about her training and experience interviewing children at the CAC, about how the CAC works with children who may have been abused, and about the safeguards in place to ensure the testimony given by the children is truthful. Regarding an interview with the victim, Deanna J., she testified that the victim was shy but exhibited normal language for a child of her age. Trial counsel did not cross-examine Mangiaracino.

¶ 6      Deanna's mother, Alicia, testified as follows. She lived with Deanna and the defendant. On December 4, 2012, Alicia was at work, and the defendant was babysitting Deanna. At some point after she returned home that evening, Deanna called to her from the bathroom. Deanna was sitting on the toilet. She told Alicia that she was burning and couldn't pee. When asked why she couldn't pee, the victim said, "probably because daddy

2

keeps rubbing his private parts and his fingers on me." Asked to clarify, the victim said, "He's always rubbing his private parts on me or touching me."

¶ 7 The parties stipulated to the testimony of Evangeline Bauer, the social worker who interviewed Deanna at the hospital. Trial counsel then stipulated to the admissibility of the section 115-10 testimony of each witness. Following the hearing, the trial court granted the State's petition to admit those three statements and the video of Deanna's interview at the CAC.

¶ 8 When jury selection commenced, the jury pool consisted of two African American jurors: Mr. Packo and Ms. Nicholson. Mr. Packo was dismissed for cause because he lied during *voir dire*. Subsequently, the State used a peremptory challenge to strike Ms. Nicholson. Defense counsel objected, arguing that the State had used a peremptory challenge on her because she was African American, as is the defendant. The trial court found that the defendant had made a *prima facie* case of discrimination. The following exchange then took place:

> "STATE: Your Honor the State admits this has absolutely nothing to do with race. She is an incredibly young juror, she's only 19, she only has a high school education, she listed no occupation. A number of things that, regardless of race, the People would strike or potentially strike a juror on. Again, a limited life experience, the youth, lack of experience with children, all of those things are perfectly valid reasons for the people to use a peremptory challenge, and those are the reasons that Ms. Nicholson is being stricken for.

> DEFENSE COUNSEL: Well Your Honor, I don't think age by itself is enough to cause a reason to believe—to excuse a young person because of their age. There are other young people on the panel still to come up. I still believe the Court is not allowed to use the peremptory challenge on Ms. Nicholson.

> COURT: So I find that the State's explanation is credible. I find that she is very young. She is—I mean, all the things the State says are, I believe, valid reasons.

3

I believe the State when they tell me that that is why they're doing it. Her age, her inexperience, her lack of experience with children. So the objection on *Batson* will be overruled. Ms. Nicholson will be excused ***."

¶ 9 When the trial began, the State's first witness was Alton police officer Manuel Espinoza. He testified that on the night of the alleged conduct, he was notified by his dispatcher that Alicia had called about a sexual assault on her daughter. He testified that Alicia subsequently called dispatch to say she had "jumped the gun." Officer Espinoza testified that he asked dispatch to call Alicia back and encourage her to meet him, which she did. Officer Espinoza then identified three calls that were recorded that night.

¶ 10 The three calls made between Alicia and 911 included the following. The first was when Alicia called 911. Among other things, the following was said by Alicia: "I recently found out—well, under suspicion—that my boyfriend has been molesting my daughter. My daughter's five years old," and "I need to have him picked up." Sometime later, Alicia called 911 again. Among other things, the following was said, "Uh yes ma'am, I called a little bit earlier *** [I] was calling to let you know it's a false alarm. *** Yes, ma'am, it is a false alarm. I do apologize." After 911 informed Officer Espinoza that Alicia had changed her mind, he had 911 call Alicia back to get her to meet him away from the defendant, which she agreed to. Defense counsel did not object to Officer Espinoza's testimony regarding the calls or the admission of the audio clips of the calls.

¶ 11 Detective Mike O'Neill testified that the defendant's birthday was September 22, 1967, establishing that the defendant was over 17 years old at the time of the alleged crime.

¶ 12 Officer Espinoza offered the following testimony regarding his conversation with Alicia the night of the 911 calls. Alicia told him that she had run an errand, leaving the

4

Deanna with the defendant. Shortly after her return, Deanna had to use the bathroom. At that point Deanna told Alicia that it burned when she peed. Alicia asked her why it would burn when she pees. Deanna stated that the defendant put his hand down there. Alicia then told Officer Espinoza that she noticed that Deanna's underwear was wet. Officer Espinoza told Alicia to take Deanna to the hospital to get a sexual assault kit performed, adding that she should take the wet underwear. Defense counsel did not cross-examine Officer Espinoza.

¶ 13    Alicia then testified mostly in conformity to her testimony at the section 115-10 hearing, with three notable exceptions. She testified that when she asked Deanna why she couldn't pee, Deanna responded, "Probably because Daddy keeps rubbing his private parts on me." There was testimony at trial that Deanna referred to the defendant as Daddy. Alicia testified that she confronted the defendant and asked him "if he was fucking [her] daughter." The defendant denied abusing Deanna. Alicia then showed the defendant the wet underwear and asked him what the police would find. According to Alicia, the defendant said, "I brought something bad into you all's life." Alicia testified that she made the second 911 call saying she "jumped the gun" because she "just wanted to get away."

¶ 14    A couple of months after the defendant was arrested, he sent a letter to Alicia. The letter starts by saying that he "felt remorse with Deanna and you." Later it states, "I have apologized to you and Deanna with all my heart. I am asking you to help me please. I would like to live outside these bars and try to lead a productive life in society, even if it is by myself."

¶ 15    Dr. James M. Gerard testified regarding his examination of Deanna on December 4. Dr. Gerard was accepted as an expert in pediatric medicine. In his examination he found a tear in Deanna's hymen, something that was abnormal. He also testified that such a tear indicates recent trauma, within the last couple of days. Dr. Gerard also took labial swabs that were later tested for DNA evidence.

¶ 16    Trial counsel stipulated to the chain of custody for the scientific evidence. Forensic biologist Jay Winters testified regarding the DNA evidence from the underwear and labial swabs. He testified that there was semen found on the underwear and labial swabs taken from Deanna. Winters testified that the semen found on the labial swabs "would be expected to occur in approximately 1 in 21 quintillion black individuals." Regarding the semen found in the underwear, he testified that that sample would be expected to be found in approximately 1 in 30 quintillion black individuals. Further, the defendant could not be excluded from the DNA samples. It was his opinion that the DNA belonged to the defendant.

¶ 17    Deanna testified at trial. She testified that the defendant touched her "private parts," which hurt her and made her feel sad. She told her mom about the touching and her mom took her to the hospital to make sure she was okay. Trial counsel did not cross-examine Deanna.

¶ 18    Former CAC employee Kim Mangiaracino, the woman who interviewed Deanna, testified. She had conducted thousands of interviews of abused children over many years. She participated in continuing training regarding the best methods to use when interviewing children. Mangiaracino explained that she worked hard to use open-ended

6

questions to keep from biasing a child's statement. She explained that on a diagram of the female body Deanna identified the female genitalia as what she referred to when she said, "private parts." Mangiaracino then identified the video of her interview with Deanna. Without objection the video was then played for the jury.

¶ 19    The following was presented in the video. Mangiaracino gave Deanna three rules: (1) to tell the truth, (2) to say "I don't know" when she didn't know, and (3) to correct Mangiaracino if Mangiaracino said something wrong. Deanna stated that the defendant used to be her dad, but he left. She didn't know why. The defendant hurt her by squeezing her arm more than one time. He did this while she was in bed when he climbed in with her. She said that she told her mom who called the police. She stated that it made her happy that the defendant was leaving them alone. Deanna went on to state that "Daddy" touched "it" with his finger, more than once in her room on her bed. It kind of made the "private" part hurt. She also said that the defendant had touched "almost the whole part, but not the whole part." Deanna also stated that the defendant had touched her on her skin. Deanna denied that the defendant had touched her with any other part of his body. While the defendant touched her, he had clothes on, and the clothes moved. He just kept wiggling his body until he went back to his room. Deanna stated that she had never seen a boy's private parts even by accident. The State then rested.

¶ 20    The defendant testified as follows. He babysat Deanna at times but denied babysitting on the night of the alleged conduct. He did not put Deanna to bed because he was not allowed to do that. Further, nothing occurred between he and Deanna that night or ever. On cross-examination the defendant maintained that he was innocent and that his

7

semen was not inside Deanna. He explained that the letter he sent to Alicia was an apology for accidentally touching Deanna's bare butt when he picked her up once. He also said that something else might have been touched. This happened on the night on which the allegations were alleged to have taken place.

¶ 21　In closing, the State returned to its theme throughout the trial: "a little girl, a little tear, and a lot of DNA." The State reminded the jurors that: (1) Deanna testified that the defendant touched her private and (2) there was semen inside Deanna's sex organ. Defense counsel reminded the jury that Deanna only said that the defendant touched her private, not that he penetrated her privates. Defense counsel went on to remind the jury that the defendant denied the allegations. Finally, defense counsel argued that the presence of semen is not enough to show penetration. In rebuttal, the State pointed out that semen does not come from fingers and that "there is not another person on the face of this earth with that semen."

¶ 22　The jury found the defendant guilty of both counts.

¶ 23　At sentencing, the parties and the court, incorrectly, believed that the proper sentencing range on each count was 6 to 30 years. The State listed the following in aggravation: the defendant's criminal history; the defendant's lack of remorse; the defendant caused serious harm by upending Deanna's family; the defendant was in a position of trust; the defendant showed no remorse; and deterrence was necessary. Defense counsel stated that the defendant maintained his innocence and went on to say that any sentence longer than a total length 25 years would be a life sentence given the defendant's age. The trial court noted the defendant's four prior felonies and a history of delinquency

as well as the fact that deterrence was essential. The court sentenced the defendant to 20 years on each count to run consecutively and to be served at 85%.

¶ 24    The defendant filed this appeal and OSAD was appointed to represent him. OSAD now asks this court, pursuant to *Anders*, for leave to withdraw, arguing that there is no meritorious issue to raise before this court.

¶ 25                                    ANALYSIS

¶ 26    OSAD filed a brief in conjunction with its motion for leave to withdraw. In that brief, OSAD identifies four potential issues and explains why OSAD concludes that they are not meritorious. We restate the issues as follows: (1) was the defendant proved guilty beyond a reasonable doubt; (2) is the State's striking of potential juror Nicholson cause for reversal; (3) was trial counsel ineffective for stipulating to the admissibility of Bauer, Alicia, and Mangiaracino's hearsay testimony of Deanna's statements pursuant to section 115-10; (4) is the defendant's sentence excessive; and (5) was defense counsel ineffective in failing to object to Officer Espinoza's hearsay testimony as well as the State's use of Officer Espinoza to lay the foundation to admit the 911 calls?

¶ 27                          Beyond a Reasonable Doubt

¶ 28    In reviewing a claim that a defendant was not proved guilty beyond a reasonable doubt, this court does not reweigh the evidence. *People v. Hendricks*, 325 Ill. App. 3d 1097, 1110 (2001); see *People v. Smith*, 185 Ill. 2d 532, 541 (1999). A conviction will only be overturned on the basis that the defendant was not proved guilty beyond a reasonable doubt when no reasonable finder of fact could have found the defendant guilty based on the evidence presented. *Smith*, 185 Ill. 2d at 541. The reviewing court must view the evidence

9

in a light most favorable to the State. *People v. Cunningham*, 212 Ill. 2d 274, 278 (2004). Determining the credibility of the witnesses is the province of the trier of fact. *Smith*, 185 Ill. 2d at 541.

¶ 29   Here, the State was required to prove that the defendant was 17 years old or older, and that he committed an act of sexual penetration on a victim who was under the age of 13. Sexual penetration is defined as "any contact, however slight, between the sex organ or anus of one person and an object or the sex organ, mouth, or anus of another person, or any intrusion, however slight, of any part of the body of one person or of any animal or object into the sex organ or anus of another person." 720 ILCS 5/11-0.1 (West 2014). The testimony at trial established each of these elements. Moreover, the State presented DNA evidence that defendant's semen was found on the labial swabs taken from Deanna. No meritorious argument can be made that no reasonable jury could have found the defendant guilty based on the facts presented at trial.

¶ 30                               Dismissed Juror

¶ 31   "[T]he Equal Protection Clause forbids the prosecutor to challenge potential jurors solely on account of their race ***." *Batson v. Kentucky*, 476 U.S. 79, 89 (1986). In the trial court a *Batson* challenge is a three-part process: First, the defendant must make a *prima facie* case of purposeful discrimination; if the judge finds that the defendant has made a *prima facie* showing then the burden shifts to the State to provide a race-neutral, nondiscriminatory basis for the challenge; finally, the judge considers the reason put forward by the State and the arguments by the defendant to determine if the defendant has established purposeful discrimination. *Id.* at 93-94, 97-98; *People v. Davis*, 231 Ill. 2d 349,

360-63 (2008). "Generally, a trial court's ultimate conclusion on a *Batson* claim will not be overturned unless it is clearly erroneous; this deferential standard is appropriate because of the trial court's pivotal role in the evaluation process." *Davis*, 231 Ill. 2d at 364.

¶ 32   After the trial court found that the defendant had made a *prima facie* showing of discrimination, the State explained that it challenged Nicholson because she was young, she had little life experience, and no experience with children. The trial court considered the State's stated reasons and the defendant's arguments and decided that the State's challenge was not made for discriminatory reasons. We cannot say that the trial court's decision was clearly erroneous. Experience with children would be important where Deanna, who was eight when she testified and five when she was abused, was going to testify, and her testimony was going to be pivotal in the case. We also accept that a more mature juror might be more receptive to the State's case.

¶ 33                              Section 115-10 Testimony

¶ 34   In addition to the common-law exceptions to the rule that hearsay testimony is not admissible, the legislature has provided certain statutory exceptions. The exception relevant here is found in section 115-10 of the Code of Criminal Procedure of 1963. 725 ILCS 5/115-10 (West 2012). Under that section, hearsay evidence of a victim of a sexual crime who was under 13 at the time of the crime is admissible provided that the court finds that "the time, content, and circumstances of the statement provide sufficient safeguards of reliability" (*id.* § 115-10(b)(1)) and as is relevant to this case such testimony is admissible if the victim testifies at the hearing or trial (*id.* § 115-10(b)(2)(A)). We review the trial

11

court's decision regarding section 115-10 testimony for an abuse of discretion. *People v. Sharp*, 391 Ill. App. 3d 947, 956 (2009).

¶ 35    The trial court held the requisite hearing regarding statements made by Deanna. Alicia and Mangiaracino testified at the hearing. Both parties stipulated to the testimony of Bauer. Defense counsel stipulated to the use of the section 115-10 testimony. The trial court found that the State had met its burden, so the hearsay testimony of Mangiaracino, Bauer, and Alicia regarding statements made by Deanna was allowed at trial.

¶ 36    Considering the testimony at the section 115-10 hearing, we find that it contained sufficient evidence to allow the trial court to make the requisite finding to allow the testimony. After reviewing the record of the hearing and reviewing the video of the interview, we find nothing that would rise to the level of an abuse of discretion.

¶ 37                                  Excessive Sentence

¶ 38    " 'The sentence imposed by the trial court is entitled to great deference and will not be reversed on appeal absent an abuse of discretion. ' " *People v. Cunningham*, 2018 IL App (4th) 150395, ¶ 48 (quoting *People v. McGuire*, 2017 IL App (4th) 150695, ¶ 38). " 'A sentence within the statutory range will not be deemed excessive, and will not be disturbed, unless it is greatly at variance with the spirit and purpose of the law or manifestly disproportionate to the offense.' " *Id.* (quoting *People v. Harris*, 2015 IL App (4th) 140696, ¶ 55).

¶ 39    The sentencing range set forth by statute at the time of the offense was 6 to 60 years. 720 ILCS 5/11-1.40(b)(1) (West 2012). The defendant's sentence is within the statutory range. Therefore, it is presumed appropriate. The trial court did not abuse its discretion in

12

sentencing the defendant to 20 years on each count. There is no evidence that the trial court relied on any improper factor in aggravation. It did, however, properly consider the defendant's prior felonies, the fact that his crime caused serious harm by uprooting Alicia and Deanna, and the fact that the defendant was in a position of authority over Deanna. 730 ILCS 5/5-5-3.2(a) (West 2012). The State also argued that a longer sentence was needed for deterrence. *Id.* The only fact that can be gleaned from the record in search of mitigating factors is that the defendant completed a drug and alcohol program in 2011-12.

¶ 40                                    Ineffective Assistance

¶ 41    An allegation of a violation of the constitutional right to effective assistance of counsel is evaluated under the standard set forth by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984), and adopted in Illinois by *People v. Albanese*, 104 Ill. 2d 504, 526-27 (1984). The standard has two prongs, both of which must be satisfied for a defendant to prevail on an ineffective-assistance-of-counsel claim. First, the defendant must show that his "counsel's representation fell below an objective standard of reasonableness and that counsel's shortcomings were so serious as to deprive the defendant of a fair trial." (Internal quotation marks omitted.) *Albanese*, 104 Ill. 2d at 525. Second, the defendant must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (Internal quotation marks omitted.) *Id.* The reviewing court can address these requirements in either order. *Id.* at 527. A failure to satisfy either prong of the *Strickland* standard causes the allegation of ineffective assistance of counsel to fail; the court need not address both prongs. See *Strickland*, 466 U.S. at 670.

13

¶ 42   We first consider whether counsel was ineffective for stipulating to the admissibility of the section 115-10 testimony. Nothing in the record suggests that the circuit court abused its discretion in allowing this testimony or that there is any argument counsel could have advanced for preventing its admission. Consequently, no argument can be made that counsel's decision to stipulate to the admissibility of the testimony was objectively unreasonable or that it prejudiced the defendant. Moving next to Officer Espinoza's testimony at trial, portions of Espinoza's testimony arguably ran afoul of the prohibition against prior consistent statements and hearsay and was admitted without objection from defense counsel. However, because the evidence against the defendant was overwhelming, no meritorious argument can be made that the defendant was prejudiced.

¶ 43                                   CONCLUSION

¶ 44   There are no meritorious issues that can be raised on appeal. Therefore, we grant OSAD's motion to withdraw and affirm the decision of the circuit court of Madison County.


¶ 45   Motion granted; judgment affirmed.