# Illinois Official Reports

## Appellate Court

***People v. McGuire*, 2017 IL App (4th) 150695**

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. CODY R. McGUIRE, Defendant-Appellant. |
| District & No. | Fourth District<br>Docket No. 4-15-0695 |
| Filed | November 22, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Macoupin County, No. 11-CF-65; the Hon. Joshua Aaron Meyer, Judge, presiding. |
| Judgment | Affirmed in part and vacated in part. |
| Counsel on Appeal | Michael J. Pelletier, Jacqueline L. Bullard, and Susan M. Wilham, of State Appellate Defender's Office, of Springfield, for appellant.<br><br>Jennifer Watson, State's Attorney, of Carlinville (Patrick Delfino, David J. Robinson, and Luke McNeill, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | JUSTICE STEIGMANN delivered the judgment of the court, with opinion.<br>Justices Knecht and Appleton concurred in the judgment and opinion. |

**OPINION**

¶ 1 In April 2011, the State charged defendant, Cody R. McGuire, with attempted first degree murder (720 ILCS 5/8-4(a), 9-1(a)(1) (West 2010)), aggravated battery with a firearm (720 ILCS 5/12-4.2(a)(1) (West 2010)), aggravated battery (720 ILCS 5/12-4(a) (West 2010)), and first degree murder (720 ILCS 5/9-1(a)(1) (West 2010)). Jury selection for defendant's trial began in March 2015. During *voir dire*, the trial court asked whether the prospective jurors "disagreed" with the *Zehr* principles as codified in Illinois Supreme Court Rule 431(b) (eff. July 1, 2012). The court asked the State and defense counsel whether they believed that the prospective jurors had "been properly admonished as far as *Zehr* principles." See *People v. Zehr*, 103 Ill. 2d 472, 476, 469 N.E.2d 1062, 1063-64 (1984). The State and defense counsel responded in the affirmative.

¶ 2 In March 2015, the jury found defendant guilty of second degree murder and aggravated battery with a firearm and not guilty of aggravated battery.

¶ 3 In May 2015, the trial court vacated defendant's conviction for second degree murder as a lesser-included offense of aggravated battery with a firearm and sentenced him to 17 years in prison for aggravated battery with a firearm. The court did not impose any specific fines when sentencing defendant. Nonetheless, the circuit clerk assessed against defendant a $20 violent-crime fee, a $50 anti-crime-fund fine, a $10 medical-costs fine, a $15 state-police-operations fee, and a $5 court-assessment fee.

¶ 4 Defendant appeals, arguing that (1) the trial court failed to properly question the jurors on the relevant *Zehr* principles, (2) his sentence was excessive, and (3) the fines imposed by the circuit clerk were improper. We conclude that (1) defendant affirmatively waived the improper questioning of the prospective jurors on the relevant *Zehr* principles, (2) the trial court did not abuse its discretion when sentencing defendant, and (3) the fines imposed by the circuit clerk must be vacated. Accordingly, we affirm in part and vacate in part.

¶ 5                                    I. BACKGROUND
¶ 6                                 A. The State's Charges
¶ 7 In April 2011, the State charged defendant with attempted first degree murder, aggravated battery with a firearm, aggravated battery, and first degree murder. Defendant originally pleaded guilty to first degree murder and aggravated battery. However, defendant appealed and was allowed to withdraw his guilty plea because his sentence for first degree murder was void. *People v. McGuire*, 2014 IL App (4th) 130083-U, ¶ 24. With his guilty plea withdrawn, defendant proceeded to a jury trial.

¶ 8                                      B. *Voir Dire*
¶ 9 Jury selection for defendant's trial began in March 2015. During *voir dire*, the trial court addressed prospective jurors as follows:

"THE COURT: The last group of questions that I'm going to ask are some principles that I have to read you by law, and I need for you all to listen closely because these are important.

The [d]efendant is presumed innocent until the jury determines after deliberation that the [d]efendant is guilty beyond a reasonable doubt.

Does anyone disagree with this, and if you do[,] please raise your hand?

[The record] will show all fifteen [prospective jurors] were given an opportunity and none of them raised their hand.

The State has the burden of proving the [d]efendant guilty beyond a reasonable doubt. Does anyone disagree with this rule of law? If you do, please raise your hand?

[The record] will show all fifteen have not raised their hand.

The [d]efendant does not have to present any testimony at all and may rely on the presumption of innocence.

Does anyone disagree with this rule of law, and if you do, please raise your hand.

[The record] will show all fifteen were given an opportunity, and they did not raise their hand.

The [d]efendant does not have to testify. Would any of you hold the fact that the [d]efendant did not testify at this trial against the [d]efendant, and if the answer is yes, please raise your hand?

[The record] will show that all fifteen were given the opportunity, and they did not raise their hand.

Do the State and defense believe that the venire has been properly admonished as far as the *Zehr* principles?

MR. SCROGGINS [(defense attorney)]: Yes, Your Honor.

MS. WATSON [(State's Attorney)]: Yes, Your Honor."

The trial court used this style of questioning throughout the entire jury selection process. The court always asked whether "the State and defense counsel believe that [the prospective jurors] have been properly admonished as far as [the] *Zehr* principles." The State and defense counsel always confirmed that they believed the prospective jurors had been properly admonished of the *Zehr* principles.

¶ 10                                                    C. The Trial

¶ 11        Defendant's trial began in March 2015. The State introduced evidence that defendant, his brother, and other individuals—including Andrea Griep, Kendra Mellenthin, and Bayleigh Hartman—were at a party. Griep and Mellenthin testified that defendant and his brother attacked Jason Walton, the victim, and that Walton was not fighting back. Griep and Mellenthin testified that defendant shot Walton three times. Griep, Mellenthin, and Hartman testified that they never saw Walton threaten, punch, or attempt to strike defendant or his brother and that defendant was not defending himself or his brother.

¶ 12        Defendant argued that he acted in self-defense. David McGuire, the defendant's brother, testified that Walton arrived at the party and started a fight with him. David testified that defendant intervened in the fight. David stated that, after the fight ended, Walton told defendant that defendant had better kill him or that he would return with a gun and kill everyone. Defendant then shot Walton.

¶ 13        The jury found defendant guilty of second degree murder and aggravated battery with a firearm and also found defendant not guilty of aggravated battery.

¶ 14                                         D. Sentencing

¶ 15     At the May 2015 sentencing hearing on defendant's conviction of the Class X offense of aggravated battery with a firearm, the State introduced the testimony of Dean Plovich, who was the superintendent of the Macoupin County jail. He testified that defendant, while in presentence incarceration, fought with another inmate. Plovich also testified that defendant bullied other inmates. Corrections officer James McLaughlin testified that defendant was involved in a fight with another inmate. Mike Kostich, who maintained the secure phone system in the jail, testified that defendant threatened individuals over the jail telephone. The State also introduced a victim impact statement from the victim's father. The State asked the trial court to sentence defendant to the maximum sentence of 30 years in prison.

¶ 16     Defendant argued for eight years in prison, two years greater than the statutory minimum sentence. Defendant highlighted his rough upbringing, including his stepfather's threats of violence, his mother's threats of suicide, and the challenges of growing up in foster care. Defendant also argued that the facts that led to the shooting were unlikely to reoccur and that he was a young man when the shooting occurred.

¶ 17     The trial court took the issue of sentencing under advisement and later in May 2015 delivered its sentence in a written order. The court vacated defendant's conviction for second degree murder (because it was a lesser-included offense of aggravated battery with a firearm) and then sentenced defendant to 17 years in prison for aggravated battery with a firearm. The court explicitly rejected the State's recommendation of 30 years because it ignored some mitigating factors in favor of defendant, including his lack of criminal convictions and possibility for rehabilitation. The court also rejected defendant's recommendation of eight years because a harsher sentence was required to deter others from committing the same crime. The court stated that it considered the following evidence when sentencing defendant: (1) the evidence presented at trial; (2) the presentence investigation report and the financial impact of incarceration; (3) aggravation and mitigation evidence offered by both parties pursuant to statute; (4) jail phone calls made by defendant; (5) defendant's credibility, demeanor, moral character, mentality, social environment, and age; (6) the nature and circumstances of the offense; (7) the parties' arguments; (8) defendant's statement; (9) victim impact statements; and (10) "all relevant factors, even if not specifically mentioned in this written decision today."

¶ 18     In July 2015, defendant filed a motion to reconsider his sentence. Defendant argued that the sentence was excessive and that the trial court failed to consider certain mitigating factors. The court, in denying defendant's motion, noted that although the court "emphasized specific evidence and arguments, its decision was not limited to those factors. Defendant fails to show that this [c]ourt's sentence was excessive or that it improperly considered, weighed[,] or ignored relevant factors."


¶ 19                                      E. Fines and Fees

¶ 20     The trial court did not impose any specific fines when sentencing defendant. Nonetheless, the circuit clerk assessed a $20 violent-crime fee, a $50 anti-crime-fund fine, a $10 medical-costs fine, a $15 state-police-operations fee, and a $5 court-assessment fee.

¶ 21     This appeal followed.

¶ 22                                II. ANALYSIS

¶ 23        On appeal, defendant argues that (1) the trial court failed to properly question the jurors on the relevant *Zehr* principles, (2) his sentence was excessive, and (3) the fines imposed by the circuit clerk must be vacated. We address these arguments in turn.

¶ 24                              A. The *Zehr* Principles

¶ 25        Citing the Illinois Supreme Court's recent decision in *People v. Sebby*, 2017 IL 119445, ¶ 8, defendant first argues that his conviction should be reversed and remanded for a new trial because the trial court failed to properly question the jurors on the relevant *Zehr* principles. Defendant originally argued that this claim was forfeited but could be reviewed under the plain-error doctrine. The State countered that, rather than mere forfeiture, defendant affirmatively waived this argument and that plain-error review is not available. We agree with the State and conclude that defendant affirmatively waived this argument. Accordingly, we decline to review his argument under the plain-error doctrine.

¶ 26                      1. *The* Zehr *Principles and Rule 431(b)*

¶ 27        Illinois Supreme Court Rule 431(b) was adopted to ensure compliance with the requirements of *Zehr*, 103 Ill. 2d at 476, 469 N.E.2d at 1063-64. Ill. S. Ct. R. 431(b) (eff. July 1, 2012). Rule 431(b) requires that a trial judge ask all potential jurors whether they both "understand" and "accept" that (1) the defendant is presumed innocent, (2) the State bears the burden of proving the defendant guilty beyond a reasonable doubt, (3) the defendant has no obligation to present evidence, and (4) the defendant's choice to not testify cannot be held against him. Ill. S. Ct. R. 431(b) (eff. July 1, 2012).

¶ 28                            2. *Plain Error and Waiver*

¶ 29        Plain-error analysis applies to cases involving procedural default, not affirmative acquiescence. *People v. Bowens*, 407 Ill. App. 3d 1094, 1101, 943 N.E.2d 1249, 1258 (2011); *People v. Townsell*, 209 Ill. 2d 543, 547-48, 809 N.E.2d 103, 105 (2004). When defense counsel affirmatively acquiesces to actions taken by the trial court, any potential claim of error on appeal is waived, and a defendant's only available challenge is to claim he received ineffective assistance of counsel. *Bowens*, 407 Ill. App. 3d at 1101, 943 N.E.2d at 1258; *People v. Young*, 2013 IL App (4th) 120228, ¶¶ 25-26, 996 N.E.2d 671; *People v. Dunlap*, 2013 IL App (4th) 110892, ¶ 12, 992 N.E.2d 184.

¶ 30                            3. *Facts of This Case*

¶ 31        In this case, the trial court merely asked whether the prospective jurors "disagree[d]" with the *Zehr* principles. The court did not ask, as is required under Rule 431(b), whether the prospective jurors understood and accepted the *Zehr* principles. Ill. S. Ct. R. 431(b) (eff. July 1, 2012). This was clear error. *Id.*; *Sebby*, 2017 IL 119445, ¶ 8; *People v. Wilmington*, 2013 IL 112938, ¶ 32, 983 N.E.2d 1015; *People v. Thompson*, 238 Ill. 2d 598, 607, 939 N.E.2d 403, 409-10 (2010).

¶ 32        Nevertheless, as defendant concedes, his counsel affirmatively acquiesced to this style of questioning. Here, the trial court always asked whether "the State and defense counsel believe that [the prospective jurors] have been properly admonished as far as *Zehr*

principles." Defense counsel always responded in the affirmative. This acquiescence by defense counsel prevents defendant from arguing this error on appeal. *Young*, 2013 IL App (4th) 120228, ¶¶ 25-26.

¶ 33                                 4. *Distinguishing* Sebby

¶ 34        In *Sebby*, 2017 IL 119445, ¶¶ 8, 80, the Illinois Supreme Court reversed and remanded a conviction when the trial court merely asked whether the prospective jurors "believed in" or "[h]ad any problems with" the *Zehr* principles, instead of asking whether they "understood" and "accepted" them. *Sebby* was decided pursuant to the plain-error doctrine because counsel failed to object to the improper questioning. See *Sebby*, 2017 IL 119445, ¶¶ 8, 48. This is in contrast to the facts of the present case in which defense counsel acquiesced regarding the trial court's improper questioning. Thus, *Sebby* is distinguishable.

¶ 35        Our conclusion does not lift the requirement that trial judges must strictly comply with Rule 431(b). That rule ensures that members of the jury understand and accept the bedrock principles of Anglo-American criminal law. Failing to comply with Rule 431(b) could threaten the integrity of the jury's verdict or, at the very minimum, cast doubt on any guilty verdict a jury might return. Trial courts must exercise diligence when instructing the jury of the *Zehr* principles as codified in Rule 431(b) and must not deviate in any way from the precise language chosen by the Illinois Supreme Court to be in that rule. Likewise, in order to protect the record, prosecutors must be aware of the strict requirements of Rule 431(b), so that they can alert the trial court to any improper deviation from that rule.

¶ 36                                       B. Sentencing

¶ 37        Alternatively, defendant argues that his sentence was excessive and requests that we vacate his sentence and remand for a new sentencing hearing. Defendant asserts that the trial court abused its discretion by failing (1) to note several statutory factors in mitigation that apply to this case and (2) to consider defendant's young age. We disagree.

¶ 38        The sentence imposed by the trial court is entitled to great deference and will not be reversed on appeal absent an abuse of discretion. *People v. Abrams*, 2015 IL App (1st) 133746, ¶ 34, 47 N.E.3d 295. "A sentence within the statutory limits will not be deemed excessive unless it is greatly at variance with the spirit and purpose of the law or manifestly disproportionate to the nature of the offense." *People v. Higgins*, 2016 IL App (3d) 140112, ¶ 29, 51 N.E.3d 1012; *People v. Fern*, 189 Ill. 2d 48, 54, 723 N.E.2d 207, 210 (1999). When imposing a sentence, the trial court must consider statutory factors in mitigation and aggravation, but the court need not recite and assign a value to each factor it has considered. *People v. Nussbaum*, 251 Ill. App. 3d 779, 781, 623 N.E.2d 755, 757 (1993).

¶ 39        In this case, we conclude that the trial court did not abuse its discretion. The court explicitly rejected the State's request for a 30-year sentence and instead sentenced defendant to 17 years in prison. This sentence was well within the statutory limits and was not at great variance with the spirit or purpose of the law or the nature of the offense committed. *Fern*, 189 Ill. 2d at 54, 723 N.E.2d at 210.

¶ 40        Likewise, in the trial court's well-reasoned sentencing order, the court stated that it considered (1) the evidence presented at trial; (2) the presentence investigation report and the financial impact of incarceration; (3) aggravation and mitigation evidence offered by both

parties pursuant to statute; (4) jail phone calls made by defendant; (5) defendant's credibility, demeanor, moral character, mentality, social environment, and age; (6) the nature and circumstances of the offense; (7) the parties' arguments; (8) defendant's statement; (9) victim impact statements; and (10) "all relevant factors, even if not specifically mentioned in this written decision today." Further, when denying defendant's motion to reconsider sentence, the trial court stated that although the court "emphasized specific evidence and arguments, its decision was not limited to those factors." The record clearly demonstrates that the trial court did not abuse its discretion when sentencing defendant.

¶ 41                                           C. Fines and Fees

¶ 42       Last, defendant argues that the circuit court clerk improperly fined him and that these fines must be vacated without remand. We agree.

¶ 43       In Illinois, the trial court may impose fines as a part of defendant's sentence. *People v. Smith*, 2014 IL App (4th) 121118, ¶ 18, 18 N.E.3d 912. Circuit clerks lack the judicial authority to impose a fine. *Id.*; *People v. Larue*, 2014 IL App (4th) 120595, ¶ 56, 10 N.E.3d 959. When presented with improper fines assessed by the clerk, an appellate court should vacate the fines. See *Smith*, 2014 IL App (4th) 121118, ¶ 18.

¶ 44       In this case, the trial court did not impose any specific fines when sentencing defendant. However, the circuit clerk assessed a $20 violent-crime fee, a $50 anti-crime-fund fine, a $10 medical-costs fine, a $15 state-police-operations fee, and a $5 court-assessment fee. The State concedes that those assessments were fines that were improperly imposed by the circuit clerk. We accept the State's concession and vacate those assessments.

¶ 45                                           III. CONCLUSION

¶ 46       For the reasons stated, we affirm defendant's conviction and his sentence. We vacate the $20 violent-crime fee, the $50 anti-crime-fund fine, the $10 medical-costs fine, the $15 state-police-operations fee, and the $5 court-assessment fee. We award the State its $75 statutory assessment against defendant as the cost of this appeal. 55 ILCS 5/4-2002 (West 2014).

¶ 47       Affirmed in part and vacated in part.