NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2021 IL App (4th) 190553-U

NO. 4-19-0553

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
June 7, 2021
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Scott County |
| MICHAEL C. JONES, | ) | No. 19TR236 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | David R. Cherry, |
| | ) | Judge Presiding. |

JUSTICE HARRIS delivered the judgment of the court.
Justices DeArmond and Cavanagh concurred in the judgment.

**ORDER**

¶ 1    *Held*: Defendant forfeited review of his claim that his jury waiver was not knowingly and understandingly made. The trial court did not abuse its discretion in sentencing defendant to six months in jail but erred in denying defendant good conduct credit for the first 10 days of his incarceration.

¶ 2    On July 11, 2019, following a bench trial, defendant, Michael C. Jones, was found guilty of driving while his license was revoked (DWLR) (625 ILCS 5/6-303(a) (West 2018)). The trial court sentenced defendant to six months in jail, with the first 10 days to be served without good conduct credit. Defendant appeals, arguing: (1) his right to a jury trial was violated when the court accepted his jury waiver without ensuring it was knowingly, voluntarily, and intelligently made, (2) the court erred in sentencing him to six months in jail because it failed to consider, as a mitigating factor, whether incarceration would endanger his medical condition, and (3) the court

erred in withholding good conduct credit for the first 10 days of his sentence. We affirm in part, vacate in part, and remand for entry of a corrected sentencing judgment.

¶ 3                                   I. BACKGROUND

¶ 4        On April 11, 2019, defendant was charged with DWLR (625 ILCS 5/6-303(a) (West 2018)). A month later, defendant entered a not guilty plea, and the trial court scheduled defendant's case for a jury trial.

¶ 5        On June 4, 2019, the trial court conducted a pretrial hearing. At the beginning of the hearing, defendant's counsel informed the court: "Your Honor, it's the intention of [defendant] to waive trial by jury today." Defendant's counsel provided the court a written jury waiver which defendant had signed that day, and which stated:

> "I, the above named [d]efendant, hereby enter my appearance in the above case, waive my right to a jury trial, and consent that my case may be tried by the [c]ourt, sitting alone, and that any penalty assessed against me or punishment inflicted upon me in said case, either by my agreement or conviction by this [c]ourt, may be enforced in the same manner and to the same extent as if I had been tried by a jury."

After reviewing the jury waiver, the court asked defendant: "Mr. Jones, did you in fact sign this waiver of jury trial today?" Defendant responded in the affirmative. The court then accepted defendant's jury waiver, stating: "Okay. Jury is waived. Bench trial is set."

¶ 6        On July 11, 2019, the trial court conducted defendant's bench trial and ultimately found defendant guilty of DWLR. Immediately following the bench trial, the court conducted defendant's sentencing hearing. In mitigation, defendant testified on his own behalf. Defendant testified that he suffered from back trouble and chronic obstructive pulmonary disease. According

to defendant, he took 14 different medications each day to manage his health conditions and took several of these medications multiple times a day. Defendant further testified that one of his medications, which he took four times each day, could only be administered through a nebulizer. Defendant anticipated he would be required to continue his medication regimen for "the foreseeable future." When asked by defense counsel whether his condition would cause "particular hardship if [he were] required to spend time in custody," defendant responded, "It may." Following the presentation of evidence, the State recommended a 10-day jail sentence, which was the minimum period of incarceration allowed for the offense. Defendant's counsel asked the court to sentence defendant to community service or, alternatively, to 10 days in jail. After the parties presented argument, the court sentenced defendant to six months in jail. Prior to issuing its sentence, the court acknowledged defendant's testimony regarding his health, stating it was "sympathetic with [*sic*] [his] physical condition" and noting defendant was "tak[ing] a lot of medications every day." The court also stated:

> "The fact that you believe that you can get out of going to jail because you take medications every day and it's going to be a problem, a hardship on you or on the jail, I don't know, is of no consequence and no import in regard to the sentencing. I will admit that as a Prosecutor and as a Judge I have considered the cost of incarceration in regard to medical Defendants where it's going to take additional expense and additional attention and I have taken that into consideration because it does cost more money. And Scott County is a small county. And the fact that you would play on that and argue that it's going to be an inconvenience and hardship for everybody, doesn't work."

After sentencing defendant, the court agreed to stay the mittimus until July 19, 2019.

¶ 7    In the trial court's written judgment, defendant's sentence is reflected as follows: "6 months in jail to be served at the Scott County Sheriff's Office with day for day credit to apply after the initial mandatory 10 days."

¶ 8    On July 16, 2019, defendant filed a motion for reconsideration or modification of his sentence, arguing his sentence was "disproportionate to the circumstances of the offense" and "contrary to relevant provisions of [s]ection 5-5-3.1 of the Unified Code of Corrections [(Code) (730 ILCS 5/5-5-3.1 (West 2018))]."

¶ 9    On July 19, 2019, defendant reported to the Scott County jail to serve his sentence in accordance with the trial court's judgment.

¶ 10    In August 2019, the trial court conducted a hearing on defendant's motion to reconsider his sentence. At the hearing, defendant's counsel argued that, in light of defendant's testimony at his sentencing hearing regarding his health, his "imprisonment [could] endanger or at least adversely affect [defendant's] medical condition and his ability to continue his medication regimen." Defendant's counsel also informed the court that, since defendant had been incarcerated, he had been hospitalized for bronchitis, although defense counsel acknowledged there was no "specific causation" between defendant's incarceration and his hospitalization. Defense counsel ultimately asked the court to reduce defendant's sentence to "time served." The court denied defendant's motion.

¶ 11    On August 12, 2019, while this appeal was pending, defendant filed a motion to stay mittimus or to be released on bond. Two weeks later, the court granted defendant's motion, releasing him on a $5000 recognizance bond pending the results of this appeal.

¶ 12                           II. ANALYSIS

¶ 13    On appeal, defendant argues: (1) his right to a jury trial was violated when the trial

court accepted his jury waiver without ensuring it was knowingly, voluntarily, and intelligently made, (2) the court erred in sentencing him to six months in jail because it failed to consider, as a mitigating factor, whether incarceration would endanger his medical condition, and (3) the court erred in withholding good conduct credit for the first 10 days of his sentence.

¶ 14                                   A. Defendant's Jury Waiver

¶ 15        First, defendant argues his right to a jury trial was violated when the trial court accepted his jury waiver without ensuring it was knowingly, voluntarily, and intelligently made. Where, as here, the relevant facts of a defendant's claim challenging the validity of his jury waiver are undisputed, our review is *de novo*. *People v. Bannister*, 232 Ill. 2d 52, 66, 902 N.E.2d 571, 581 (2008).

¶ 16        As an initial matter, defendant acknowledges he has forfeited appellate review of his claim regarding the validity of his jury waiver because he failed to raise the issue in the trial court. See *id.* at 64-65. Nonetheless, defendant requests that we review his claim under the plain error doctrine, which "serves as a narrow and limited exception to the general [rule of procedural default]." (Internal quotation marks omitted.) *Id.* at 65. Under the plain error doctrine, we may review unpreserved errors when "a clear and obvious error occurs and: (1) the evidence is closely balanced; or (2) that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process." *Id.* The first step in the plain error analysis is to ascertain whether an error occurred at all. *Id.*

¶ 17        A criminal defendant's right to a trial by jury is guaranteed under the federal and state constitutions. U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, §§ 8, 13. A defendant may waive this right, but any such waiver must be "knowingly and understandingly made." *People v. Bracey*, 213 Ill. 2d 265, 269, 821 N.E.2d 253, 255 (2004) (citing 725 ILCS 5/103-6 (West

2002)). The trial court must ensure the defendant's jury waiver was knowingly and understandingly made before accepting it but is not required to give any certain admonition or advice for the defendant to effectuate the waiver. *Bannister*, 232 Ill. 2d at 66. The validity of a jury waiver "cannot be determined by application of a precise formula, but rather turns on the particular facts and circumstances of each case." *Bracey*, 213 Ill. 2d at 269.

¶ 18            "Generally, a jury waiver is valid if it is made by defense counsel in defendant's presence in open court, without an objection by defendant." *Id.* at 270. "Since the accused speaks and acts through his attorney, the trial court is entitled to rely on the defense attorney to execute his professional responsibilities." *People v. Tucker*, 183 Ill. App. 3d 333, 335, 539 N.E.2d 243, 244 (1989); see *People v. Sailor*, 43 Ill. 2d 256, 260-61, 253 N.E.2d 397, 399 (1969). In *Tucker*, on the date the defendant's trial was scheduled to commence, the trial judge, in the defendant's presence, asked defense counsel, "Jury trial?" and defense counsel replied, "No. Bench." *Tucker*, 183 Ill. App. 3d at 334. On review, the appellate court found that this exchange, coupled with the defendant's failure to object to his counsel's statement, reflected the defendant's knowing and understanding waiver of his right to a jury trial. *Id.* at 335. The same result was reached in *People v. Asselborn*, 278 Ill. App. 3d 960, 962-63, 664 N.E.2d 110, 112 (1996), where the trial court inquired of defense counsel, in the defendant's presence, "Jury waiver. Bench or jury?" to which counsel responded, "It will be a bench your Honor."

¶ 19            In accordance with *Tucker* and *Asselborn*, we find defendant here knowingly and understandingly waived his right to a jury trial. During the pretrial hearing on June 4, 2019, in defendant's presence, defense counsel informed the trial court it was "the intention of [defendant] to waive trial by jury today." Defendant did not object to defense counsel's statement, nor did defendant object later during the proceeding when the court scheduled defendant's bench trial.

Indeed, far from objecting to defense counsel's statement, defendant confirmed his intention to proceed with a bench trial when he provided the court a signed jury waiver form. See *Bracey*, 213 Ill. 2d at 269-70 (Although a written jury waiver is "not always dispositive of a valid waiver," the existence thereof "is one means by which a defendant's intent may be established.").

¶ 20　　　　The cases cited by defendant, *People v. Scott*, 186 Ill. 2d 283, 710 N.E.2d 833 (1999) and *People v. Sebag*, 110 Ill. App. 3d 821, 443 N.E.2d 25 (1982), in which the reviewing courts found the respective defendants' jury waivers invalid, are inapposite. *Scott* is distinguishable because, in that case, the defendant was not "present in open court when a jury waiver was discussed" and the only statements regarding a bench trial made in open court "arose in a dialogue between defendant's attorney and the trial judge concerning a motion to dismiss." *Scott*, 186 Ill. 2d at 285-86. By contrast, here, defense counsel affirmatively waived defendant's right to a jury trial in open court while the defendant was present. *Sebag* is also distinguishable because, in that case, the defendant was "without benefit of counsel." *Sebag*, 110 Ill. App. 3d at 829.

¶ 21　　　　Because defendant's jury waiver was made knowingly and understandingly, the trial court did not err in accepting his waiver. Therefore, the plain error doctrine does not excuse the forfeiture of defendant's claim.

¶ 22　　　　　　　　　　B. Defendant's Sentence

¶ 23　　　　Defendant's second and third claims of error challenge the propriety of his sentence. First, defendant argues the trial court erred in sentencing him to six months in jail because it failed to consider, as a mitigating factor, whether incarceration would endanger his medical condition, as required under section 5-5-3.1(a)(12) of the Code (730 ILCS 5/5-5-3.1(a)(12) (West 2018)). Defendant also argues the court violated the County Jail Good Behavior Allowance Act

(Act) (730 ILCS 130/3 (West 2018)) by withholding good conduct credit for the first 10 days of his sentence. Although, as defendant acknowledges, he failed to preserve these claims of sentencing error for review (see *People v. Hillier*, 237 Ill. 2d 539, 544, 931 N.E.2d 1184, 1187 (2010)), we note the State does not argue forfeiture applies and instead only argues defendant's claims are moot. Here, we do not find defendant's claims challenging his sentence to be forfeited and will instead consider them on their merits. See *People v. Whitfield*, 228 Ill. 2d 502, 509, 888 N.E.2d 1166, 1170 (2007) (finding the State forfeits a claim that an issue asserted by the defendant was not preserved for review when it fails to argue forfeiture on appeal).

¶ 24     We first must address the State's argument that the claims raised by defendant are moot. As noted by the State, the mootness doctrine requires a court of review to dismiss an appeal when "the issues involved have ceased to exist because intervening events have made it impossible for [the court] to grant effectual relief." *People v. Hill*, 2011 IL 110928, ¶ 6, 961 N.E.2d 773. A defendant's claim challenging his sentence is moot if the defendant has completely discharged his sentence. *People v. Dawson*, 2020 IL App (4th) 170872, ¶ 8. The State argues, because defendant was sentenced to six months in jail starting on July 19, 2019, he has undoubtedly completed his sentence. This argument overlooks the fact that, in August 2019, the trial court granted defendant's motion to stay the mittimus and released him on a recognizance bond pending the result of this appeal. Further, the record includes a document titled "Completion of County Jail Sentence" from the Greene County Sheriff's Office, where defendant was serving his sentence, which indicates defendant has served 38 days of his jail sentence and "owes 47 days jail time to complete [his] sentence." Clearly, defendant has not completed his jail sentence. Therefore, his claims challenging the propriety of his sentence are not moot.

¶ 25     We now turn to the merits of defendant's contentions of sentencing error. "On

review, the sentence imposed by the trial court will not be reversed absent an abuse of discretion." *People v. Pina*, 2019 IL App (4th) 170614, ¶ 20, 143 N.E.3d 794. Where the defendant's sentence is within the statutory limits permitted for the offense of which he was convicted, the sentence "will not be deemed excessive and an abuse of the court's discretion unless it is greatly at variance with the spirit and purpose of the law or manifestly disproportionate to the nature of the offense." (Internal quotation marks omitted.) *Id.*

¶ 26        Defendant was convicted of DWLR which, under the circumstances, allowed the trial court to impose a jail sentence anywhere from a minimum of 10 days up to a maximum of 364 days. See 625 ILCS 5/6-303(a), (c) (West 2018); 730 ILCS 5/5-4.5-55(a) (West 2018). As stated, the court sentenced defendant to six months in jail, which was within the allowable statutory limits. Thus, we will consider whether defendant's sentence was excessive using the abuse of discretion standard as described in *Pina*, above. See *Pina*, 2019 IL App (4th) 170614, ¶ 20.

¶ 27        Defendant argues the trial court erred in sentencing him to six months in jail because it failed to consider, as a mitigating factor, whether incarceration would endanger his medical condition, as required under section 5-5-3.1(a)(12) of the Code (730 ILCS 5/5-5-3.1(a)(12) (West 2018)). It is well-established that a defendant's sentence must be determined based upon the seriousness of his offense and with the objective of restoring him to useful citizenship. Ill. Const. 1970, art. I, § 11. Additionally, section 5-5-3.1(a) of the Code (730 ILCS 5/5-5-3.1(a) (West 2018)) identifies multiple factors that "shall be accorded weight in favor of withholding or minimizing a sentence of imprisonment," one of which is whether "[t]he imprisonment of the defendant would endanger his or her medical condition." *Id.* § 5-5-3.1(a)(12). Although the court is required to consider the statutory mitigating factors identified in the Code in shaping a defendant's sentence, the court "need not recite and assign a value to each factor it has

considered." *People v. McGuire*, 2017 IL App (4th) 150695, ¶ 38, 92 N.E.3d 494. Instead, "[i]f mitigating evidence is presented at the sentencing hearing, this court presumes that the trial court took that evidence into consideration, absent some contrary evidence." (Internal quotation marks omitted.) *Pina*, 2019 IL App (4th) 170614, ¶ 19.

¶ 28      In the present case, we find defendant failed to establish a period of incarceration would endanger an existing medical condition. Further, to the extent defendant's medical condition was pertinent to the trial court's sentencing decision, we find that it was considered. At the sentencing hearing, defendant testified he suffers from "back trouble and COPD" and that, as a result of his conditions, he takes multiple medications on a regular basis. However, defendant did not testify that confinement in jail would adversely affect his medical conditions. When asked by his counsel whether, due to a medical condition, spending time in custody would cause him "any particular hardship," defendant simply responded, "It may." No further evidence was offered to establish that either of defendant's medical conditions could not be effectively managed during a period of confinement or that he would likely suffer any extra hardship. Moreover, prior to imposing its sentence, the court specifically noted that defendant was "tak[ing] a lot of medications every day" and stated it was "sympathetic with [*sic*] [defendant's] physical condition." While the court also stated it took into account defendant's medical condition in the context of the burden his incarceration could place on the facility in which he was confined, such consideration was not error, and further, the comments do not reflect that the court considered defendant's medical condition exclusively in that context. Based upon the evidence presented, as well as the court's comments, we find the court did not fail to consider whether defendant's incarceration would "endanger" his medical condition, as required under the Code.

¶ 29      Lastly, we address defendant's contention that the trial court violated the Act by

withholding good conduct credit for the first 10 days of his sentence. Section 3 of the Act provides, in relevant part: "[t]he good behavior of any person who commences a sentence of confinement in a county jail for a fixed term of imprisonment after January 1, 1987 shall entitle such person to a good behavior allowance." 730 ILCS 130/3 (West 2018)). The statute identifies six exceptions to this general rule, none of which are relevant here. It has previously been determined that, "[a]bsent one of the enumerated statutory exceptions, a trial court has no authority to deny good-behavior credit as provided in the Act." *People v. Monson*, 2012 IL App (3d) 100868, ¶ 9, 972 N.E.2d 736. Here, defendant was sentenced to a fixed term of incarceration in the county jail, and none of the statutory exceptions apply. Additionally, nothing in the Act limits a defendant's eligibility for a good conduct allowance to only that period beyond the mandatory minimum sentence for the offense of which he was convicted. See 625 ILCS 5/6-303(c) (West 2018) (requiring that a defendant convicted of DWLR must serve a minimum term of 10 consecutive days of imprisonment). Therefore, defendant was clearly eligible for a good behavior allowance under the Act for the entirety of his sentence, and the court erred in withholding the allowance during the first 10 days of defendant's sentence.

¶ 30                                    III. CONCLUSION

¶ 31           For the reasons stated above, we find the trial court erred in withholding good conduct credit during the first 10 days of defendant's sentence. Accordingly, we vacate and remand for entry of a corrected sentencing judgment to reflect defendant's eligibility for good conduct credit for the entirety of his jail sentence. We otherwise affirm the court's judgment.

¶ 32           Affirmed in part and vacated in part.

¶ 33           Cause remanded.