NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2021 IL App (4th) 200448-U

NO. 4-20-0448

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
December 23, 2021
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
|     Plaintiff-Appellee, | ) | Circuit Court of |
|     v. | ) | Livingston County |
| FACIONDA WASHINGTON, | ) | No. 19CF138 |
|     Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Jennifer H. Bauknecht, |
| | ) | Judge Presiding. |

JUSTICE HARRIS delivered the judgment of the court.
Justices Cavanagh and Holder White concurred in the judgment.

**ORDER**

¶ 1    *Held*: The trial court did not abuse its discretion when sentencing defendant to 15 years in prison.

¶ 2    Defendant, Facionda Washington, pleaded guilty to multiple drug-related offenses, and the trial court sentenced her to a total of 15 years in prison. She appeals, arguing the court abused its discretion when sentencing her by relying on an inapplicable aggravating factor, failing to consider a statutory mitigating factor, and failing to properly consider her general rehabilitative potential. We affirm.

¶ 3                                  I. BACKGROUND

¶ 4    In October 2019, the State charged defendant by amended information with four counts of unlawful delivery of a controlled substance (720 ILCS 570/401(c)(10.6), (d)(i), (g); *id.*

§ 407(b)(2), (b)(5) (West 2018)) and one count of unlawful delivery of a look-alike substance (*id.* § 404(b)). It alleged that on four separate days in May 2019, defendant delivered to a confidential police source more than 50 grams of a substance containing hydrocodone (count I and a Class 1 felony), a look-alike substance purported to be cocaine (count II and a Class 3 felony), a substance containing cocaine (count III and a Class 2 felony), and substances containing alprazolam (counts IV and V and Class 2 felonies). The State additionally alleged defendant's deliveries of cocaine and alprazolam were made within 500 feet of a public park.

¶ 5        In January 2020, defendant entered open pleas of guilty to each amended charge. In June 2020, defendant's sentencing hearing was conducted. Her presentence investigation report (PSI) showed she was 29 years old and had a criminal history that included juvenile adjudications for theft in 2003 and 2005; misdemeanor convictions for possession of alcohol by a minor in 2009 and driving with a suspended license in 2016; and three felony convictions for unlawful delivery of a controlled substance in 2019.

¶ 6        With respect to defendant's prior felony convictions, the PSI showed she was charged in Livingston County case No. 18-CF-210 with four counts of unlawful delivery of a controlled substance. The charges were based on allegations that on separate occasions in July 2018, defendant sold cocaine to a confidential police source. Following a search of the residence where defendant was living with a roommate, drug paraphernalia, an electronic scale, money, and small amounts of cannabis and cocaine were found in the roommate's bedroom. When questioned by the police, defendant "admitted she was involved in drug sales and indicated she was doing so to help pay her regular living expenses." In January 2019, defendant pleaded guilty to three of the four felony counts against her and in March 2019, she was sentenced to 36 months' probation.

¶ 7 The PSI shows defendant was on probation for approximately two months when the drug offenses at issue in the present case were committed. Regarding the circumstances of the underlying offenses, the PSI states that on four different days in May 2019, the police used a confidential source to purchase Xanax (alprazolam) pills, cocaine, and liquid hydrocodone from defendant for cash. It further states as follows:

> "On [May 9, 2019], 10 Xanax pills were purchased for $50 at County Market. On [May 14, 2019], 10 Xanax pills were bought for $50 at County Market. On [May 23, 2019], [0].5 grams of cocaine and 102 grams of liquid [h]ydrocodone were purchased for $100 in the bathroom at County Market. On [May 28, 2019], 1 gram of cocaine was purchased for $80 at County Market. In each instance the transaction was witnessed and recorded by investigators. The drugs field-tested positive, with the exception of the cocaine purchased on [May 28, 2019], which was inconclusive."

The same month, the police searched a residence and located "a significant amount of cannabis and drug paraphernalia." Defendant was located walking away from the residence. When questioned by the police, she asserted "she was not selling drugs[,] but she would get it for a friend." After being confronted with information that she was observed "getting pills" from a particular individual, defendant "became upset and began crying." She then stated she " 'was doing it for the money.' "

¶ 8 Regarding defendant's family history, the PSI showed defendant's "father was in and out of prison most of her childhood" and her mother was never a part of her life. Defendant reported that both of her parents had drug addictions and her father was currently incarcerated in

- 3 -

Kentucky on a pending gun charge. Given her parents' absence, defendant spent time in the care of her grandmother, who she reported was physically and emotionally abusive. At some point, the Illinois Department of Children and Family Services (DCFS) was "involved" with defendant's family and she "was briefly in foster care." When defendant was 13, her aunt, Brontia Benge, obtained custody of defendant and her siblings. Defendant considered Benge to be her mother and referred to her as such. Defendant also had a nine-year-old daughter who DCFS placed in Benge's care due to the underlying criminal case.

¶ 9    While on probation in connection with case No. 18-CF-210, defendant resided with her sister and their children. She reported that environment was "unsupportive" due to drug use in the home by her sister's boyfriend. Defendant had plans to move to Kentucky to live with her father and other immediate family members. However, while the probation department was investigating a transfer of her probation to Kentucky, defendant was arrested for the underlying offenses.

¶ 10    The PSI further showed defendant quit high school during her junior year and, while on probation, attended General Educational Development (GED) classes at Heartland Community College. Her employment history generally included "dietary" or "kitchen" work. Prior to being arrested in connection with case No. 18-CF-210, defendant worked at a restaurant. After being released on bond in that case, she babysat for two separate families. However, by the time she was sentenced to probation in that case, defendant was unemployed and unable to find employment because "she lost her ID." Defendant was reportedly "in the process of obtaining her social security card *** to get proper identification to apply for a job." She received state medical benefits and $356 in monthly food support.

- 4 -

¶ 11        According to the PSI, defendant reported long-term cannabis use beginning at age 16 and cocaine use starting at age 24. While the charges in case No. 18-CF-210 were pending, defendant obtained a substance abuse evaluation, which recommended she receive intensive outpatient treatment. While on probation, she attended group and individual treatment sessions. She was regularly drug tested and "always positive for cannabis" with levels of the drug that increased from the end of March 2019 to mid-April 2019. On April 23, 2019, defendant also tested positive for cocaine. The report indicates defendant "admitted to daily use [of cocaine] before her arrest in 2019," which she attributed to the people she was spending time with. However, she also reported that "the first time she tested positive for cocaine while on [p]robation was the first time she had used/relapsed." Additionally, defendant asserted that she used cocaine on a more regular basis the week of her arrest, claiming "she was just 'starting to spiral out of control.' " Defendant maintained that "her arrest was 'not just an eye-opener but a brain-opener.' "

¶ 12        When providing information in connection with her PSI, defendant acknowledged that "she was the one to blame" for her prior felony convictions in case No. 18-CF-210. Defendant maintained she tried to better herself by "going to [the Institute for Human Resources (IHR) for counseling services] and by getting her GED." Regarding the drug offenses in the present case, defendant, again, maintained she " 'wasn't really selling drugs.' " She asserted she obtained the drugs from a friend and sold them to an individual named Chelsie Embry. Defendant maintained she "only helped [Embry] out because [Embry] continued to message her about getting drugs." She asserted that she overcharged Embry because she needed extra cash for her own cocaine habit. Additionally, defendant reported that she felt " 'very stupid' " and " 'embarrassed' " by her actions.

¶ 13        At sentencing, the State presented no additional evidence. Defendant presented letters from a friend and two relatives, describing her as a helpful and supportive friend and family member, a loving mother, and a person struggling with drug addiction. She also presented her discharge summary from an IHR outpatient substance abuse program. The summary, dated May 23, 2019, showed defendant attended individual and group treatment sessions and was being discharged from treatment because she was "relocating out of state and transferring probation." It stated defendant actively participated in treatment sessions, appeared to want to stay clean and sober, and showed good insight into how substances had impacted her life. According to the summary, defendant's home environment was not supportive of a clean and sober lifestyle and, therefore, she had plans to move to Kentucky with her father, who would assist her with getting into treatment, transportation, financial support, and obtaining employment. Defendant's prognosis was listed as "fair."

¶ 14        Defendant also presented the testimony of police officer Brian Maier, the lead investigator in the underlying case. Maier stated that during each of the May 2019 drug transactions, it appeared defendant would obtain money from the confidential source, go to another location to obtain the substances, and then return and deliver those substances. When questioned by Maier, defendant maintained "that she wasn't selling" but "helping a friend" obtain drugs.

¶ 15        In presenting argument to the trial court, the State noted defendant faced a maximum of 30 years in prison on count I and concurrent sentences on all five counts. It recommended the court sentence defendant to a total of 16 years in prison. The State argued that aggravating factors in the case included two factors set forth in section 411 of the Illinois Controlled Substances Act (Controlled Substances Act) (720 ILCS 570/411 (West 2018)).

Specifically, it asserted that under section 411(1) of the Controlled Substances Act (*id.* § 411(1)), defendant delivered two of the "most highly toxic controlled substances"—cocaine and hydrocodone. The State also argued that under section 411(4) (*id.* § 411(4)), defendant committed non-possessory offenses while having "no other visible means of support." Further, it asserted there was a need for deterrence and a lack of applicable mitigating factors.

¶ 16      Defendant's counsel suggested a sentence of probation was appropriate for defendant or, alternatively, a sentence of no more than seven years in prison. Counsel argued that defendant acted under "provocation" because someone defendant knew "kept continuing to message her to get the drugs for her" and that defendant committed the offenses at issue to get money for her own drug habit. Counsel further noted defendant's difficult childhood and argued a lengthy prison sentence would not help defendant's rehabilitation efforts.

¶ 17      Defendant also provided the trial court with a statement in allocution, which was read by her attorney. In her statement, defendant apologized for the offenses at issue and asserted she recognized that she needed help with her addictions, to become a better person mentally and emotionally, and to learn how to break old habits. Defendant also noted that while incarcerated on her pending charges, she attended anger management classes, church activities, and substance abuse meetings.

¶ 18      The trial court entered judgments of convictions on all five counts and sentenced defendant to concurrent sentences of 15 years in prison for count I, 5 years in prison for count II, and 7 years in prison each for counts III, IV, and V. In setting forth its decision, the court noted that defendant had an addiction and that she "did not have a great upbringing." However, it expressed that it did not believe defendant when she stated she was "helping out a friend" and that

her conduct went "beyond a relapse" and involved repeated drug transactions.

¶ 19    The trial court found "strong aggravating factors" were present, including the two section 411 factors argued by the State—that defendant delivered two of the most highly toxic substances as identified by the legislature and committed a non-possessory offense with no other visible means of support. Regarding that second factor, the court specifically stated as follows:

"[T]he fact that you had no other means, visible means of support so you are dealing drugs to pay your bills which is I think what you said, so that is also a little bit more than supporting your addiction. That's going beyond that. So[,] you knew what you were doing. You knew what you were doing."

The court further found deterrence to be a strong aggravating factor when dealing with delivery charges. Finally, it also determined defendant's prior criminal history was a factor in aggravation. It noted that once defendant was sentenced to probation for the very same offenses in case No. 18-CF-210, she immediately went back to dealing drugs.

¶ 20    Finally, when imposing defendant's sentence, the trial court stated defendant was "eligible for 50% good time," possibly eligible for "another six month[s'] good conduct credit," and had already spent a lengthy period of time in presentence custody. It noted those factors could ultimately reduce the time defendant would spend in prison to six years.

¶ 21    In July 2020, defendant filed a motion to reconsider sentence. She argued her sentence was excessive, in part, because she lacked a lengthy criminal history. Defendant also argued the trial court failed to give adequate consideration or weight to several factors, including her rehabilitative potential and that she acted under the strong provocation or inducement of the confidential police source. In September 2020, the court denied the motion, stating aggravating

factors in the case greatly outweighed the mitigating factors.

¶ 22        This appeal followed.

¶ 23                                II. ANALYSIS

¶ 24        On appeal, defendant argues the trial court abused its discretion by sentencing her to 15 years in prison. She contends a 15-year sentence was excessive because the trial court relied on an inapplicable aggravating factor, failed to consider a statutory factor in mitigation, and failed to consider her general rehabilitative potential.

¶ 25        The Illinois Constitution requires that "[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. I, § 11. When selecting an appropriate sentence, the trial court has broad discretionary powers. *People v. Garcia*, 2018 IL App (4th) 170339, ¶ 37, 99 N.E.3d 571. "An appropriate sentence must be based upon the particular circumstances of an individual case, including (1) the defendant's history, character, and rehabilitative potential; (2) the seriousness of the offense; (3) the need to protect society; and (4) the need for deterrence and punishment." *Id.*

¶ 26        "The sentence imposed by the trial court is entitled to great deference and will not be reversed on appeal absent an abuse of discretion." *People v. McGuire*, 2017 IL App (4th) 150695, ¶ 38, 92 N.E.3d 494. "In considering the propriety of a sentence, the reviewing court must proceed with great caution and must not substitute its judgment for that of the trial court merely because it would have weighed the factors differently." *People v. Fern*, 189 Ill. 2d 48, 53, 723 N.E.2d 207, 209 (1999). "A sentence within statutory limits will not be deemed excessive unless it is greatly at variance with the spirit and purpose of the law or manifestly disproportionate to the nature of the offense." *Id.* at 54; see also *People v. Schnoor*, 2019 IL App (4th) 170571, ¶ 99, 145

N.E.3d 544 ("An abuse of discretion occurs when the sentence differs greatly from the spirit and purpose of the law or is manifestly disproportionate to the nature of the offense."). Additionally, "[a]n abuse of discretion will not be found unless the court's sentencing decision is fanciful, arbitrary, or unreasonable to the degree that no reasonable person would agree with it." (Internal quotation marks omitted.) *People v. Lawson*, 2018 IL App (4th) 170105, ¶ 28, 102 N.E.3d 761.

¶ 27 Here, defendant pleaded guilty to five felony counts of unlawful delivery of a controlled or look-alike substance. In count I, the State charged defendant with the unlawful delivery of hydrocodone, a Class 1 felony, and the most serious offense charged. There is no dispute that for that offense and because of her criminal history, defendant faced a possible sentencing range of 4 to 30 years in prison. See 730 ILCS 5/5-4.5-30(a) (2018) (providing that the sentence of imprisonment for a Class 1 felony "shall be a determinate sentence of not less than 4 years and not more than 15 years"); 720 ILCS 570/408(a) (West 2018) (providing that a defendant convicted of a second or subsequent offense under the Controlled Substances Act "may be sentenced to imprisonment for a term up to twice the maximum term otherwise authorized"). Ultimately, the trial court sentenced defendant to 15 years in prison on count I and concurrent sentences of 5 and 7 years on all remaining counts. In doing so, the court relied upon the aggravating factors of deterrence, defendant's criminal history, and two factors set forth in section 411 of the controlled substances act (*id.* § 411(1), (4)). The record also reflects a determination that the aggravating factors outweighed the mitigating factors. We find no error by the court.

¶ 28 Initially, defendant argues the trial court abused its discretion by relying on one of the factors set forth in section 411 of the Controlled Substance Act—the commission of a nonpossessory offense without any visible means of support (*id.* § 411(4)). She suggests that

- 10 -

through section 411, the legislature sought to deter and punish only commercial traffickers and large-scale purveyors of controlled substances. Defendant maintains her conduct did not fall within that category because she was a drug addict who delivered drugs to a friend and her conduct did not involve organized crime or "an unusually large amount of controlled substances." We disagree that section 411(4) was inapplicable to defendant.

¶ 29       Section 411 provides that when determining an appropriate sentence for a defendant convicted of an offense under the Controlled Substances Act, the trial court may consider certain specified factors "as indicative of the type of offenses which the legislature deems most damaging to the peace and welfare of the citizens of Illinois and which warrants the most severe penalties." *Id.* § 411. Those factors include the following:

"(1) the unlawful delivery of the most highly toxic controlled substances, as reflected by their inclusion in Schedule I or II of this Act;

(2) offenses involving unusually large quantities of controlled substances, as measured by their wholesale value at the time of the offense;

(3) the unlawful delivery of controlled substances by a non-user to a user of controlled substances;

(4) non-possessory offenses by persons who have no other visible means of support;

(5) offenses involving the large-scale manufacture of controlled substances;

(6) offenses which indicate any immediate involvement whatsoever with organized crime in terms of the controlled substance's manufacture, importation, or volume distribution;

- 11 -

(7) the manufacture for, or the delivery of controlled substances to persons 3 years or more junior to the person(s) convicted under this Act;

(8) the unlawful delivery of anabolic steroids by an athletic trainer, coach, or health club personnel;

(9) the possession, delivery, or manufacture of controlled substances or cannabis in the presence of a child under 17 years of age." *Id.*

¶ 30 A plain reading of section 411 shows that it contains individual factors that explicitly apply to the conduct of nonusers and conduct which involves large quantities of controlled substances, large-scale manufacturers, and organized crime (*id.* § 411(2), (3), (5), and (6)). Significantly, however, it also contains several factors that do not implicate such considerations (*id.* § 411(1), (4), (7), (8), (9)). For example, defendant does not dispute that the trial court correctly applied section 411(1) to her case. Under that section, the unlawful delivery of the most highly toxic controlled substances—which includes hydrocodone and cocaine (*id.* § 206(b)(1)(x), (b)(4)), two of the substances delivered by defendant—warrants more severe penalties for an offender. That section does not include any requirement as to quantity, scale of a drug operation, or the offender's status as a nonuser. As another example, section 411(9) may even be applied in the absence of delivery or manufacturing, as it contemplates more severe penalties based on even "the possession *** of controlled substances or cannabis in the presence of a child under 17 years of age." *Id.* § 411(9). Ultimately, the inclusion of considerations of quantity, scale, and drug use into specific individual factors indicates a legislative intent that those considerations do not apply to section 411 in its entirety.

¶ 31 Here, the trial court found section 411(4) applied in aggravation. That section

requires the involvement of a non-possessory offense by a person with no other visible means of support. In this case, defendant delivered controlled substances—non-possessory offenses—at a time when she was unemployed and had no apparent income. She admitted to the police that she committed the underlying offenses " 'for the money.' " Although defendant argues she was assisting a friend, the record reflects she made multiple deliveries and had a recent history of being involved "in drug sales *** to help pay her regular living expenses." Given the circumstances presented, the court did not abuse its discretion in finding section 411(4) was applicable to defendant.

¶ 32 Defendant further argues the trial court erred by neglecting to consider the statutory factor in mitigation that her conduct was induced or facilitated by Embry, the confidential police source. Specifically, she notes the Unified Code of Corrections provides that a mitigating factor for the trial court's consideration at sentencing is whether "[t]he defendant's criminal conduct was induced or facilitated by someone other than the defendant." 730 ILCS 5/5-5-3.1(a)(5) (West 2018). Defendant contends her defense attorney raised such an argument with the court, but the court did not address it and therefore "simply did not consider Embry's role in provoking defendant to deliver drugs as a mitigating factor." On appeal, defendant asserts that if not for Embry's "persistence," she would not have committed the offenses at issue.

¶ 33 Here, at sentencing, defendant's counsel argued defendant did not "really think she was selling" drugs but committed the underlying offenses because Embry, someone defendant knew, "kept continuing to message her to get the drugs ." Contrary to defendant's assertions on appeal, however, the record does not support a finding that the trial court failed to consider defense counsel's argument or any corresponding factor in mitigation. Instead, the record shows the court

- 13 -

addressed defendant's argument but found it was entitled to little or no weight. The court stated as follows:

> "I don't believe you when you say you were helping out a friend. You might have been doing that, but you were also dealing. To suggest that you don't understand that giving drugs to somebody or helping them out by going to the dealer, bringing them to the buyer, you knew that because you managed not to do that for more than six months while you were awaiting sentencing on the 2018 case. And as soon as you were out from under the Court's thumb with sentencing hanging over your head, you immediately went back to your old habits. Not once, not twice, not three times."

¶ 34　　　　Again, we find no abuse of discretion by the trial court. Although defendant characterized her actions as only helping a friend who repeatedly contacted her for drugs, the record shows she engaged in multiple deliveries and, at one point, acknowledged that money was a motivation for her conduct. Additionally, as the court noted, defendant was on probation at the time of the underlying offenses for precisely the same behavior, suggesting she understood the import of her actions. The court was not required to accept defendant's explanation for the offenses at sentencing and, given the circumstances presented, the court did not err in rejecting or applying little weight to the argument that her conduct was brought about by another.

¶ 35　　　　Finally, defendant contends the trial court failed to properly consider her potential for rehabilitation. She contends the court's comments at sentencing ignore that she successfully attended counseling in connection with her probation. Defendant argues her counseling records show she had good insight into her substance abuse issues, had a desire to stay clean and sober,

and was attempting to secure a different living situation to facilitate her rehabilitation. Defendant also points out that she participated in various programs while in jail for the underlying offenses, expressed remorse, and took responsibility for her own actions.

¶ 36 Here, the trial court's comments do not reflect that it failed to consider or ignored any of the evidence presented. The court explicitly commented on defendant having engaged in treatment. However, it noted that instead of reporting mistakes she made with drugs during that time frame, defendant "chose to just keep doing it and keep doing it and keep doing it." The court also commented on defendant's relocation plan, noting she intended to live with her father who was also a drug addict and, thus, defendant was "going from one place of drugs to another place." The court's comments further reflect a finding that defendant's conduct while on probation reflected negatively on her potential for rehabilitation, in that she very quickly began selling drugs once she was sentenced to probation for very similar offenses. Additionally, the record shows a determination by the court that defendant had not, in fact, accepted responsibility for her crimes. Such a finding was supported by defendant's attempt to minimize her own culpability by asserting she " 'wasn't really selling drugs' " and only trying to help Embry, an assertion which the court rejected.

¶ 37 We note a sentencing court is not required to give greater weight to a defendant's rehabilitative potential than to the seriousness of the offense or other aggravating factors. *People v. Tye*, 323 Ill. App. 3d 872, 890, 753 N.E.2d 324, 341 (2001). Here, the record indicates the trial court considered the evidence defendant argues showed her rehabilitative potential. However, it simply did not find such evidence was entitled to the weight asserted by defendant and found aggravating factors in the case weighed more heavily. We find no error in the court's

determination.

¶ 38 Ultimately, the record reflects the trial court considered appropriate factors at sentencing. The 15-year sentence it imposed was well within the applicable statutory range and, given the evidence presented, neither "greatly at variance with the spirit and purpose of the law [n]or manifestly disproportionate to the nature of the offense." *Fern*, 189 Ill. 2d at 54. Accordingly, we find no abuse of discretion by the court.

¶ 39 III. CONCLUSION

¶ 40 For the reasons stated, we affirm the trial court's judgment.

¶ 41 Affirmed.